1  | MARK F. HAZELWOOD, SBN 136521
DIRK D. LARSEN, SBN 246028
2  | LOW, BALL & LYNCH
505 Montgomery Street, 7th Floor
3  | San Francisco, California  94111-2584
Telephone (415) 981-6630
4  | Facsimile (415) 982-1634

5  | Attorneys for Defendant
CITY OF CLEARLAKE

6

7

8  | UNITED STATES DISTRICT COURT

9  | NORTHERN DISTRICT OF CALIFORNIA

10

11 | SHERRILL FOSTER, HOWARD FOSTER,                    )    Case No.: C-07-5445-EMC
SHEILA BURTON, and MINNIE BURTON,                  )
12 |                                                   )    DEFENDANT CITY OF
                Plaintiffs,                           )    CLEARLAKE'S NOTICE OF
13 |                                                   )    MOTION AND MOTION TO
                                                      )    DISMISS PLAINTIFFS'
14 |        v.                                         )    COMPLAINT (F.R.C.P. 12(b)(6)),
                                                      )    OR IN THE ALTERNATIVE,
15 | SHANNON EDMONDS, LORI TYLER, COUNTY )    MOTION FOR A.MORE
OF LAKE, CITY OF CLEARLAKE, and DOES 1- )    DEFINITE STATEMENT
16 | 100,                                              )    (F.R.C.P. 12(e)); MEMORANDUM
                                                      )    OF POINTS AND AUTHORITIES
17 |                Defendants.                         )
   |  _____)

18 |                                                        Date:        May 21, 2008
                                                         Time:        10:30 a.m.
19 |                                                        Courtroom:   C, 15th Floor

20 |                                                        Judge:       Hon. Edward M.
                                                                      Chen
21

22 |        TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

23 |        NOTICE IS HEREBY GIVEN that on May 21, 2008, at 10:30 a.m., in Courtroom C of the

24 | above-entitled Court, defendant CITY OF CLEARLAKE (the "City") will move the Court for an order

25 | dismissing plaintiffs SHERRILL FOSTER, HOWARD FOSTER, SHEILA BURTON and MINNIE

26 | BURTON's ("Plaintiffs") first, second and fifth claims for relief against the City pursuant to Federal

27 | Rules of Civil Procedure, Rule 12(b)(6), on the grounds that the above-named claims in Plaintiffs' First

28 | Amended Complaint fail to state a claim upon which relief can be granted.  In the alternative, the City

1    will move the Court for an order requiring Plaintiffs to provide a more definite statement of the

2    allegations against the City pursuant to Federal Rules of Procedure, Rule 12(e).

3    <u>**STATEMENT OF RELIEF SOUGHT**</u>

4        The City hereby moves the Court for an order dismissing Plaintiffs' first, second and fifth claims

5    for relief against the City pursuant to Federal Rules of Civil Procedure, Rule 12(b)(6), on the grounds

6    that the above-named claims in Plaintiffs' First Amended Complaint fail to state a claim upon which

7    relief can be granted.  In the alternative, the City hereby moves the Court for an order requiring Plaintiffs

8    to provide a more definite statement of the allegations against the City pursuant to Federal Rules of

9    Procedure, Rule 12(e).

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT CITY OF CLEARLAKE'S MOTION TO DISMISS (F.R.C.P 12(b)(6)) AND MOTION FOR
MORE DEFINITE STATEMENT (F.R.C.P. 12(e)); MEMORANDUM OF POINTS AND AUTHORITIES

J:\1427\sf0002\Pld\P-MTD-mpa.wpd                                                                                    C-07-5445-EMC

**POINTS AND AUTHORITIES**

TABLE OF CONTENTS

Page(s)

I.   STATEMENT OF ISSUES TO BE DECIDED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  STATEMENT OF RELEVANT FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

     A.   Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

     B.   Incident . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

     C.   Factual Allegations Against the City . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

     D.   Claims for Relief Against the City . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

III. ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

     A.   Applicable Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

     B.   Plaintiff's First Claim for Violation of Federal Civil Rights Fails
          to State a Claim Upon Which Relief Can Be Granted . . . . . . . . . . . . . . . . . . . 4

          1.   The FAC Does Not Allege that City Officials Engaged in
               Conduct that Deprived Plaintiffs of Federal Rights . . . . . . . . . . . . . . . . . 4

               a.   The City Does Not Owe Plaintiffs or Decedents a
                    Duty to Protect Them from Private Conduct . . . . . . . . . . . . . . . . . 5

               b.   The State-Created Danger Doctrine Does Not Apply
                    Because Plaintiffs Have Not Alleged That City
                    Officials Affirmatively Placed Decedents in a
                    More-Vulnerable Position . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

               c.   The FAC Does Not State Facts Sufficient to Support
                    a Claim for Selective Protection in Violation of the
                    Equal Protection Clause . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

          2.   Because Edmonds' Shooting of Decedents Did Not Constitute
               State Action, That Act Is Not Attributable to the City for
               Purposes of a § 1983 Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

               a.   Edmonds Was Not Performing a Public Function in
                    Selling Illicit Drugs and Shooting Decedents . . . . . . . . . . . . . . . 7

               b.   Plaintiffs Do Not Plead Facts Showing that Edmonds
                    Was a Joint Participant in a City Action . . . . . . . . . . . . . . . . . . . 8

-i-

DEFENDANT CITY OF CLEARLAKE'S MOTION TO DISMISS (F.R.C.P 12(b)(6)) AND MOTION FOR
MORE DEFINITE STATEMENT (F.R.C.P. 12(e)); MEMORANDUM OF POINTS AND AUTHORITIES

J:\1427\sf0002\Pld\P-MTD-mpa.wpd                                                    C-07-5445-EMC

Page(s)

       c.    The FAC Does Not Plead Facts Satisfying the
           State-Compulsion Test . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

       d.    The FAC Does Not Plead Facts Satisfying the
           Symbiotic-Relationship Test . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

C.    Plaintiffs' Second Claim for Violation of Federal Civil Rights Fails
      to State a Claim for Municipal Liability Under the *Monell* Doctrine . . . . . . . . . . . . . . 10

D.    City Officials Are Entitled to Qualified Immunity from Suit and
      Liability for Plaintiffs' § 1983 Claims for Relief . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

E.    Plaintiffs' Fifth Claim, for Violations of the California Civil Code,
      Fails to State a Claim Upon Which Relief Can Be Granted . . . . . . . . . . . . . . . . . . . . . 12

      1.    Because Plaintiffs' California Claim Fails to Allege
           Compliance with the California Tort Claims Act, It Fails to
           State a Claim for Relief Against the City . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

      2.    The FAC Fails to Plead Its California Claim Against the City,
           a Public Entity, With the Requisite Specificity, and Thus Fails
           to Plead a Claim for Relief . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

      3.    The City and Its Officials Are Entitled to Statutory Immunities
           from Liability Under Plaintiffs' Fifth Claim for Relief . . . . . . . . . . . . . . . . . . . 15

IV.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

1

# TABLE OF AUTHORITIES

2

3  Cases                                                                                          Page(s)

4  United States Supreme Court Cases

5  Anderson v. Creighton
           483 U.S. 635 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
6
   American Mfrs. Mut. Ins. Co. v. Sullivan
7          502 U.S. 40 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

8  Blum v. Yaretsky
           457 U.S. 991 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
9
   Board of County Comm'rs of Bryan County v. Brown
10         520 U.S. 397 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

11 Burton v. Wilmington Park Authority
           365 U.S. 715 (1951) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
12
   DeShaney v. Winnebago County Dept. of Social Svcs.
13         489 U.S. 189 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5-6

14 Hafer v. Melo
           502 U.S. 21 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
15
   Jackson v. Metropolitan Edison Co.
16         419 U.S. 345 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

17 Lugar v. Edmondson Oil
           457 U.S. 922 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
18
   Marsh v. Alabama
19         326 U.S. 501 (1946) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

20 Monell v. Dept. of Social Svcs. of City of New York
           436 U.S. 658 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
21
   Saucier v. Katz
22         533 U.S. 194 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11-12

23 Terry v. Adams
           345 U.S. 461 (1953) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
24

25 United States Court of Appeals Cases

26 Balistreri v. Pacifica Police Dept.
           901 F.2d 696, 699 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-5
27
   Brunette v. Humane Society of Ventura County
28         294 F.3d 1205 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7-9

United States Court of Appeals Cases (continued)                                    Page(s)

Harris v. City of Roseburg
        664 F.2d 1121 (9th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Houghton v. South
        965 F.2d 1532 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Howerton v. Gabica
        708 F.2d 380 (9th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

In re Delorean Motor Co.
        991 F.2d 1236 (6th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 9

Johnson v. Knowles
        113 F.3d 1114 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Kennedy v. Ridgefield
        439 F.3d 1055 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Macias v. Ihde
        219 F.3d 1018 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Munger v. City of Glasgow Police Dept.
        227 F.3d 1082 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Navarro v. Block
        72 F.3d 712 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Thomas v. Independence Township
        463 F.3d 285 (3rd Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Trevino v. Gates
        99 F.3d 911 (9th Cir.1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Weisbuch v. County of Los Angeles
        119 F.3d 778 (9th Circ. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3


United States District Court Cases

Cellars v. Pacific Coast Packaging, Inc.
        189 F.R.D. 575 (N.D. Cal. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4


California Cases

Baughman v. State of California
        38 Cal.App.4th 182, 45 Cal.Rptr.2d 82 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Giannuzzi v. State of California
        (1993) 17 Cal.App.4th 462, 21 Cal.Rptr.2d 335 (1993) . . . . . . . . . . . . . . . . . . . . 15

-iv-

California Cases (continued)                                                   Page(s)

Kemmerer v. County of Fresno
        200 Cal.App.3d 1426 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

McCarthy v. Frost
        33 Cal.App.3d 872 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Mittenhuber v. City of Redondo Beach
        142 Cal.App.3d 1(1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13-14

Nestle v. City of Santa Monica
        6 Cal.3d 920 (1972). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13-14

People ex rel. Dep't of Transp. v. Superior Court
        5 Cal.App.4th 1480 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

State v. Superior Court (Bodde)
        32 Cal.4th 1234 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13


Constitutional Provisions

        U.S. Constitution, Amendment IV . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-4

        U.S. Constitution, Amendment IX. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-4

        U.S. Constitution, Amendment XIV. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-4


Federal Statutes

        42 U.S.C. § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3-5, 7, 10


Federal Rules of Civil Procedure

        Rule 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3-4, 11-12, 14, 16

        Rule 12(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 11-12, 14, 16


California Statutes

        California Civil Code

        § 51 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

        § 51.6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

        § 51.7 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,3, 12-14

        § 52 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3, 12-14

California Statutes (continued)                                                                    Page(s)

California Government Code

§ 815.2(b)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

§ 815(b)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

§ 818.2  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

§ 820.2  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

§ 821  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

§ 821.6  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

§ 845  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

§ 911.2  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

§ 900  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12-13

§ 945.4  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

DEFENDANT CITY OF CLEARLAKE'S MOTION TO DISMISS (F.R.C.P 12(b)(6) AND MOTION FOR
MORE DEFINITE STATEMENT (F.R.C.P. 12(e)); MEMORANDUM OF POINTS AND AUTHORITIES

J:\1427\sf0002\Pld\P-MTD-mpa.wpd                                                          C-07-5445-EMC

1    **I.    STATEMENT OF ISSUES TO BE DECIDED**

2        This motion presents the following issues for decision: (1) whether to dismiss plaintiffs

3    SHERRILL FOSTER, HOWARD FOSTER, SHEILA BURTON and MINNIE BURTON's

4    ("Plaintiffs") first claim for relief against defendant CITY OF CLEARLAKE (the "City") for deprivation

5    of federal rights under color of state law (42 U.S.C. § 1983) pursuant to Federal Rules of Civil

6    Procedure, Rule 12(b)(6); (2) whether to dismiss Plaintiffs' second claim for relief against the City for

7    deprivation of federal rights under color of state law (42 U.S.C. § 1983) pursuant to Federal Rules of

8    Civil Procedure, Rule 12(b)(6); (3) whether to dismiss Plaintiffs' fifth claim for relief against the City

9    for violations of California Civil Code §§ 51, 51.7 and 52; and/or (4) whether to require Plaintiffs to

10   amend their complaint to contain a more definite statement of the factual bases for the allegations

11   against the City as well as for the federal and state immunities of the City and its officials.

12   **II.    STATEMENT OF RELEVANT FACTS**

13       **A.    Background**.

14       Plaintiffs Sherrill Foster and Howard Foster bring their claims individually and as the mother and

15   father, respectively, and successors in interest for their son, decedent Christian Dante Foster ("Foster")

16   and the Estate of Christian Dante Foster.  (First Amended Complaint ["FAC"], ¶ 3.)  Plaintiffs Sheila

17   Burton and Minnie Burton bring their claims individually and as the mother and grandmother,

18   respectively, and successors in interest for decedent Rashad Laron Morris Williams ("Williams") and the

19   Estate of Rashad Laron Morris Williams.  (FAC, ¶ 3.)  Foster and Williams were of African-American

20   descent.  (FAC, ¶ 20.)  Defendants Shannon Edmonds ("Edmonds") and Lori Tyler ("Tyler") are adult

21   residents of the County of Lake, and are of Caucasian descent.  (FAC, ¶¶ 5, 20.)  Plaintiffs do not allege

22   that Edmonds and Tyler are employed by the City of Clearlake.  They do allege, however, that unnamed

23   Doe defendants were employees and/or agents of the other defendants, presumably including the City,

24   and that these Doe defendants acted within the course and scope of that relationship at all material times.

25   (FAC, ¶ 6.)  In addition, they allege that "each of the Defendants was at all material times an agent,

26   servant, employee, partner, joint venturer, co-conspirator, and/or alter ego of the remaining Defendants,

27   and in doing the things herein alleged, was acting within the course and scope of that relationship."

28   (FAC, ¶ 8.)

1    Plaintiffs allege that Edmonds and Tyler had engaged in the unlawful sale of recreational drugs

2    between January 2004 and December 27, 2005.  (FAC, ¶ 14.)  They further allege that Edmonds used

3    boys as young as 14 or 15 years old as part of his network for selling these drugs.  (FAC, ¶ 14.)

4    Edmonds and Tyler had been targets in several robbery attempts designed to steal all or part of their

5    cache of marijuana and other drugs.  (FAC, ¶ 15.)

6    **B.    Incident**.

7    In the early morning hours of December 7, 2005, Foster and Williams "presented themselves" at

8    the house shared by Edmonds and Tyler.  (FAC, ¶¶ 13, 14.)  A fight broke out, and Foster and Williams

9    ran out of the house.  (FAC, ¶ 14.)  As they were running, Edmonds shot both men in the back with a

10    firearm, resulting in their deaths.  (FAC, ¶ 14.)  Plaintiffs allege that the altercation and shooting were

11    racially motivated.  (FAC, ¶ 20.)  They do not allege that any City employee, agent or official was

12    present at or near the Edmonds residence at the time of the altercation and shooting.  (*See* FAC, ¶¶ 13,

13    14.)

14    **C.    Factual Allegations Against the City**.

15    Plaintiffs allege that the City or its employees (the unnamed Doe defendants) engaged in the

16    following conduct prior to the incident: "allowing Edmonds and Tyler unlawfully to sell recreational

17    drugs, to possess firearms, to use minors in unlawful sale of recreational drugs ... failing to protect

18    persons such as Christian and Rashad ... allowing Edmonds and Tyler to use, store and/or unlawfully

19    distribute illegal drugs from their residence[;]" "fail[ing] to force [Edmonds and Tyler] to stop illegal

20    activities[;]" and "provid[ing] protection to Edmonds, a known drug dealer, and ... allowing the racist

21    Edmonds to continue his illegal activity."  (FAC, ¶¶ 7, 15, 20.)  They further allege that "the local

22    agency policies, customs, practices and procedures in this regard were clearly inadequate or non-existent,

23    and were the moving force behind constitutional deprivations suffered by the aggrieved parties."  (FAC,

24    ¶ 20.)

25    Plaintiffs also allege that the City or its employees engaged in a number of wrongful acts after the

26    incident.  These acts relate to the investigation of the incident and ultimate prosecution of one Renato

27    Hughes for the murder of Foster and Williams.  (FAC, ¶¶ 27, 32, 34.)  Plaintiffs allege that these acts

28    resulted from City customs, policies, practices, and/or procedures as well as inadequate hiring, training,

1  instruction, monitoring, supervision, evaluation, investigation and discipline of its employees.  (FAC,

2  ¶¶ 32-34.)  According to the FAC, these deficiencies on the part of the City "were a moving force and/or

3  a proximate cause of the deprivations of Plaintiffs' clearly-established and well-settled constitutional

4  rights[.]" (FAC, ¶ 35.)

5       **D.**    **Claims for Relief Against the City**.

6       Plaintiffs allege three claims against the City: (1) first claim for relief, brought pursuant to 42

7  U.S.C. § 1983, for violation of federal civil rights, including the right to be free from unreasonable

8  search and seizure (Fourth and Fourteenth Amendments), the right to be free from excessive force

9  (Fourth and Fourteenth Amendments), the right to be free from the use of unlawful deadly force (Fourth

10  and Fourteenth Amendments), the right to be free from wrongful government interference with familial

11  relationships and the right to Plaintiffs' companionship, society and support of each other (Fourth, Ninth

12  and Fourteenth Amendments); (2) second claim for relief, brought pursuant to 42 U.S.C. § 1983, for

13  violation of unspecified federal rights, apparently under the *Monell* doctrine; and (3) violations of

14  California Civil Code §§ 51, 51.7, 52, *et alia*, based on the denial of equal protection of laws under the

15  Fourteenth Amendment on account of race, color and/or national origin.  (FAC, ¶¶ 24-40, 54-58.)

16  **III.**    **ARGUMENT**

17       **A.**    **Applicable Law**.

18       Federal Rule of Civil Procedure 12 permits parties to move the court to dismiss complaints for

19  "failure to state a claim upon which relief can be granted[.]" F.R.C.P. 12(b)(6).  Dismissal of a

20  complaint pursuant to F.R.C.P. 12(b)(6) is proper where there is either a "lack of a cognizable legal

21  theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica*

22  *Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988).   Dismissal is also proper where the complaint, on its

23  face, discloses affirmative defenses or absolute bars to recovery. *Weisbuch v. County of Los Angeles*,

24  119 F.3d 778, 783, fn. 1 (9th Circ. 1997).

25       A court reviewing a 12(b)(6) motion accepts the facts alleged in the complaint as true. *Balistreri*,

26  901 F.2d at 699.  But it need not accept as true conclusionary allegations or legal characterizations. *See*

27  *In re Delorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993).  "In practice, a ... complaint must

28  contain either direct or inferential allegations respecting all the material elements to sustain a recovery

1    under *some* viable legal theory." *Id.* (emphais in original) (internal citations omitted).

2    Federal Rule of Civil Procedure 12(e) provides that "[a] party may move for a more definite

3    statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous

4    that the party cannot reasonably prepare a response." A 12(e) motion for a more definite statement is

5    proper where the complaint is so indefinite that the defendant cannot ascertain the nature of the claim

6    being asserted. *Cellars v. Pacific Coast Packaging, Inc.*, 189 F.R.D. 575, 578 (N.D. Cal. 1999).

7    **B.    Plaintiff's First Claim for Violation of Federal Civil Rights Fails to State a Claim
        Upon Which Relief Can Be Granted**.

8

9    Plaintiffs' first claim for relief against the City is for the violation of rights guaranteed by the

10    Fourth, Ninth and Fourteenth Amendments to the U.S. Constitution.  (FAC, ¶ 24, 25.)  Plaintiffs bring

11    this claim pursuant to 42 U.S.C. § 1983, which provides that:

12         [e]very person who, under color of any statute, ordinance, regulation,
           custom, or usage, of any State or Territory or the District of Columbia,
13         subjects, or causes to be subjected, any citizen of the United States or
           other person within the jurisdiction thereof to the deprivation of any rights,
14         privileges, or immunities secured by the Constitution and laws, shall be
           liable to the party injured in an action at law ...
15

16    The FAC appears to pose two theories of liability under § 1983: that the acts of the unnamed City

17    employees constitute a violation of Plaintiffs' federal civil rights, and that Edmonds and Tyler

18    themselves acted under color of state law before and during the incident.  (FAC, ¶¶ 7, 15, 20, 26.)  Under

19    neither theory, however, do Plaintiffs plead sufficient facts for the FAC to withstand a motion to dismiss

20    pursuant to F.R.C.P. 12(b)(6).  *See Balistreri*, 901 F.2d at 699.

21    **1.    The FAC Does Not Allege that City Officials Engaged in Conduct that
        Deprived Plaintiffs of Federal Rights**.

22

23    The FAC alleges that City officials engaged in the following conduct prior to the incident:

24    "allowing Edmonds and Tyler unlawfully to sell recreational drugs, to possess firearms, to use minors in

25    unlawful sale of recreational drugs ... failing to protect persons such as Christian and Rashad ... allowing

26    Edmonds and Tyler to use, store and/or unlawfully distribute illegal drugs from their residence[;]"

27    "fail[ing] to force [Edmonds and Tyler] to stop illegal activities[;]" and "provid[ing] protection to

28    Edmonds, a known drug dealer, and ... allowing the racist Edmonds to continue his illegal activity."

1  (FAC, ¶¶ 7, 15, 20.)  In essence, Plaintiffs allege that City officials violated their federal rights by failing

2  to enforce city, state and/or federal laws, and by failing to protect Plaintiffs from Edmonds.  As

3  discussed in the following sections, such conduct does not amount to an actionable deprivation of

4  Plaintiffs' rights.

5      **a.    The City Does Not Owe Plaintiffs or Decedents a Duty to Protect
             Them from Private Conduct.**

6

7          As a general rule, municipalities have no constitutional duty to provide services to individuals,

8  even if they possess information that such individuals might be at risk from crime.  *DeShaney v.*

9  *Winnebago County Dept. of Social Svcs.*, 489 U.S. 189, 195-197 (1989); *Balistreri*, 901 F.2d at 699-700.

10 The Due Process Clause "forbids the State itself to deprive individuals of life, liberty, or property

11 without 'due process of law,' but its language cannot fairly be extended to impose an affirmative

12 obligation on the State to ensure that those interests do not come to harm through other means."

13 *DeShaney*, 489 U.S. at 195.  Accordingly, the alleged failure of City officials to protect Foster and

14 Williams cannot form the basis for § 1983 liability.

15         The assertion that the City officials' "protection" of Edmonds or permission of his activities

16 deprived Plaintiffs of federal rights is equally without merit.  To allow such an assertion would make the

17 respective municipality, county or state liable under § 1983 every time one person, even a suspected

18 criminal, commits a crime against another.  The assertion is also at odds with *DeShaney's* holding that

19 the Due Process Clause is a limitation on state action, not a source of affirmative obligations.  *See id.*

20 Accordingly, the City officials' alleged conduct is insufficient to form the basis of a § 1983 claim.

21     **b.    The State-Created Danger Doctrine Does Not Apply Because
             Plaintiffs Have Not Alleged That City Officials Affirmatively Placed
             Decedents in a More-Vulnerable Position.**

22

23         Under the "state-created danger" doctrine, a governmental entity may have an affirmative

24 constitutional duty to protect certain individuals from private actors when its conduct places those

25 individuals in a more-vulnerable position than they otherwise would have been.  For example, the Ninth

26 Circuit found a Due Process violation where a police officer told an alleged molester of the accuser's

27 allegations, thus making the particular accuser more vulnerable to the alleged molester's retaliation.

28 *Kennedy v. Ridgefield*, 439 F.3d 1055, 1058, 1062-1063 (9th Cir. 2006).  Similarly, officers placed an

1   individual in a more dangerous position than they found him—resulting in a Due Process violation—

2   when they ejected him from a bar late on a cold night and provided him with no means of reaching

3   home. *Munger v. City of Glasgow Police Dept.*, 227 F.3d 1082, 1084-1087 (9th Cir. 2000).

4        Here, Plaintiffs do not allege facts demonstrating that City officials placed these particular

5   decedents in a more-vulnerable position than they otherwise would have been. On the contrary, Foster

6   and Williams simply "presented themselves" at the Edmonds residence, without any coercion,

7   encouragement or even participation on the part of City officials. (FAC, ¶ 14.) There is no indication

8   that City officials had knowledge of decedents' presence at Edmonds' residence, of their intention to

9   present themselves there, or even of their presence within the City. Accordingly, City officials engaged

10  in no conduct that can have increased the vulnerability of these particular plaintiffs to Edmonds' actions.

11  The state-created danger doctrine thus does not apply, and Plaintiffs cannot sustain a claim for § 1983

12  relief under that theory.

13          **c.**   **The FAC Does Not State Facts Sufficient to Support a Claim for**
    **Selective Protection in Violation of the Equal Protection Clause.**

14

15       The *DeShaney* court acknowledged that the "State may not, of course, selectively deny its

16  protective services to certain disfavored minorities without violating the Equal Protection Clause."

17  *DeShaney*, 489 U.S. at 197, fn. 3. Here, Plaintiffs have alleged that City officials protected Edmonds,

18  who is of Caucasian descent, and that they failed to protect Foster and Williams, who were of African-

19  American descent. (FAC, ¶ 20.) They thus appear to be alleging an Equal Protection violation based on

20  selective denial of protective services. However, they fail to allege facts that would support this

21  allegation.

22       In *Navarro v. Block*, 72 F.3d 712, 713, 716-717 (9th Cir. 1995), for example, the plaintiff

23  pleaded a possible Equal Protection violation by alleging that, in response to her call involving possible

24  domestic violence, the 911 dispatcher did not classify the situation as an "emergency," thus

25  discriminating against abused women. Similarly, in *Macias v. Ihde*, 219 F.3d 1018, 1021-26, 1028 (9th

26  Cir. 2000), the plaintiff stated a potential Equal Protection violation where, after numerous calls to and

27  other contacts with the local police regarding her estranged husband's threatening behavior, the police

28  failed to protect her due to possible discrimination against women and Latinos.

DEFENDANT CITY OF CLEARLAKE'S MOTION TO DISMISS (F.R.C.P 12(b)(6)) AND MOTION FOR
MORE DEFINITE STATEMENT (F.R.C.P. 12(e)); MEMORANDUM OF POINTS AND AUTHORITIES

J:\1427\sf0002\Pld\P-MTD-mpa.wpd

C-07-5445-EMC

1    Here, by contrast, there is no allegation that City officials had any opportunity at all to protect

2    Foster and Williams before or during the incident. Plaintiffs do not allege that City officials were alerted

3    to Foster and Williams' presence at the Edmonds residence, or even to their presence in the City.

4    Plaintiffs do not even allege that, prior to or during the incident, any City official knew that Foster and

5    Williams were of African-American descent. Based on the allegations in the FAC, it was impossible for

6    City officials to selectively deny protection to Foster and Williams based on their race, as City officials

7    had neither notice of their race nor of their need for protection. Accordingly, Plaintiffs' FAC fails to

8    state a claim for violation of Equal Protection based on selective denial of protective services.

9    **2.    Because Edmonds' Shooting of Decedents Did Not Constitute State Action, That Act Is Not Attributable to the City for Purposes of a § 1983 Claim.**

10

11    Section 1983 provides a cause of action only for deprivations of federal rights by persons acting

12    "under color of [state law]." 42 USC § 1983. Generally, the "under color of state law" requirement is the

13    same as the "state action" requirement for Due Process violations. *Lugar v. Edmondson Oil*, 457 U.S.

14    922, 928-29 (1982). A private individual or entity may be considered a state actor where the "state has

15    exercised such coercive power or has provided such significant encouragement, either overt or covert,

16    that the choice must be that of the State." *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 52

17    (1999). In other words, state action exists where, due to the relationship between the private actor and

18    the state, the private actor's conduct may be fairly attributable to the state. *See Jackson v. Metro. Edison*

19    *Co.*, 419 U.S. 345, 358 (1974). The inquiry is not whether the private individual was a state actor, but

20    whether he performed a state action in the instance at issue. *American Mfrs.*, 526 U.S. at 51.

21    The U.S. Supreme Court and the Ninth Circuit Court of Appeals have employed four tests for

22    determining whether a private actor's conduct constitutes state action: (1) performance of a public

23    function; (2) joint participation/government nexus; (3) state compulsion or encouragement; and (4)

24    symbiotic relationship between the state and the private actor.

25    **a.    Edmonds Was Not Performing a Public Function in Selling Illicit Drugs and Shooting Decedents.**

26

27    A private person or entity can act under color of state law when performing a function that "has

28    been 'traditionally the exclusive prerogative of the State.'" *Brunette v. Humane Society of Ventura*

-7-

1   *County*, 294 F.3d 1205, 1214 (9th Cir. 2002) (quoting *Jackson*, 419 U.S. at 353 (1974)). Classic

2   examples of a public function in this sense include providing utilities, water, etc., and conducting

3   elections for public officials. *See Marsh v. Alabama*, 326 U.S. 501 (1946); *see Terry v. Adams*, 345 U.S.

4   461 (1953).

5         Here, Plaintiffs allege that Edmonds and Tyler sold unlawful drugs via a network of teenage

6   boys, and that Edmonds shot Williams and Foster in a racially motivated attack. (FAC, ¶¶ 14, 20.)

7   Without belaboring the point, it is obvious that neither of these acts constitutes a function that has been

8   traditionally the exclusive prerogative of the state. *See Brunette*, 294 F.3d at 1214.  Accordingly,

9   Plaintiffs' allegations fail to satisfy the public function test.

10             **b.**    **Plaintiffs Do Not Plead Facts Showing that Edmonds Was a Joint**

11                   **Participant in a City Action.**

12        To be engaged in joint action under the joint participation test, the "private party must be a

13  'willful participant' with the State or its agents in an activity which deprives others of constitutional

14  rights." *Brunette*, 294 F.3d at 1211 (internal citation omitted). But a private party is liable under this

15  theory "only if its particular actions are 'inextricably intertwined' with those of the government." *Id.*

16  (internal citations omitted).

17        In *Howerton v. Gabica*, 708 F.2d 380, 384 (9th Cir. 1983), the Ninth Circuit found joint

18  participation where police officers' presence at a private landlord's eviction "created an appearance that

19  the police sanctioned the officer's conduct."   But mere acquiescence by the police to "stand by" a

20  private entity's repossession procedure is insufficient to constitute state action; instead, the police must

21  actively intervene in and aid the repossession. *Harris v. City of Roseburg*, 664 F.2d 1121, 1127 (9th Cir.

22  1981).

23        Here, Plaintiffs do not allege that City officials were even present at the scene of the incident, or

24  at Edmonds' residence any time before the incident.  No City official thus stood by Edmonds' activities

25  or created the appearance that the City sanctioned his conduct.  In addition, Plaintiffs plead no facts

26  indicating that Edmonds was a "willful participant" with the City or its agents. *See Brunette*, 294 F.3d at

27  1211.  Instead, they recite merely boilerplate, conclusionary allegations of a conspiracy as well as that

28  City officials "protected" Edmonds—allegations that are insufficient to plead a claim for relief. *See*

1  FAC, ¶¶ 8, 20; *see In re Delorean Motor Co.*, 991 F.2d at 1240.  Plaintiffs thus fail to plead facts

2  sufficient to satisfy the joint participation test.

c. **The FAC Does Not Plead Facts Satisfying the State-Compulsion Test.**

4  Under the state-compulsion test, state action may be found "where the state has 'exercised

5  coercive power or has provided such significant encouragement, either overt or covert, that the [private

6  actor's] choice must in law be deemed to be that of the State.'" *Johnson v. Knowles*, 113 F.3d 1114,

7  1119 (9th Cir. 1997) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)).  Mere approval of or

8  acquiescence in the actions of a private party is not sufficient to justify holding the state responsible;

9  instead, the state must actively contribute to the performance of the alleged act(s).  *Blum*, 457 U.S. at

10  1004-1005.

11  Here, Plaintiffs have not pleaded facts indicating that City officials in any way exercised coercive

12  power over Edmonds, or provided significant encouragement to him.  As discussed in section III(B)(1),

13  *supra*, Plaintiffs allege that City officials "protected" Edmonds and "permitted" him to sell unlawful

14  drugs.  (FAC, ¶¶ 7, 20.)  But these allegations—which themselves do not constitute violations of

15  Plaintiffs' rights—at most represent mere approval of or acquiescence in Edmonds' actions, and are thus

16  insufficient to satisfy the state-compulsion test.  *See Blum*, 457 U.S. at 1004-1005.

d. **The FAC Does Not Plead Facts Satisfying the Symbiotic-Relationship Test.**

19  Under the symbiotic-relationship test, a private actor may act under color of state law where "the

20  government has 'so far insinuated itself into a position of interdependence (with a private entity) that it

21  must be recognized as a joint participant in the challenged activity.'" *Brunette*, 294 F.3d at 1213

22  (quoting *Burton v. Wilmington Park Authority*, 365 U.S. 715, 725 (1951)).  "*Burton* teaches that

23  substantial coordination and the integration between the private entity and the government are the

24  essence of a symbiotic relationship."  *Id.*  Significant financial integration is another factor.  *Id.*

25  Here, Plaintiffs have not pleaded substantial coordination and integration between between

26  Edmonds and City officials, aside from the conclusionary boilerplate to the effect that they were "co-

27  conspirators."  *See* FAC, ¶¶ 8, 20; *see In re Delorean Motor Co.*, 991 F.2d at 1240.  They have also not

28  pleaded significant financial integration between the City and Edmonds.  Accordingly, the FAC fails to

1   plead facts that would satisfy the symbiotic-relationship test.

2       Because Plaintiffs have not sufficiently pleaded facts that would permit Edmonds' and Tyler's

3   activities to be considered state action under any recognized test, his conduct cannot be attributed to the

4   City.  Accordingly, the FAC's first claim for relief does not state a claim against the City under the

5   theory that Edmonds and Tyler acted under color of law.

6       **C.    Plaintiffs' Second Claim for Violation of Federal Civil Rights Fails to State a Claim for Municipal Liability Under the *Monell* Doctrine.**

7

8       A municipal entity cannot be held liable for unconstitutional acts of its officers based solely on

9   the doctrine of respondeat superior.  *Monell v. Dept. of Social Svcs. of City of New York*, 436 U.S. 658,

10  694 (1978).  A municipality may be held liable for an official policy or informal custom that led to the

11  unconstitutional acts.  *Id.* at 690-94.  The custom must be so "persistent and widespread" that it

12  constitutes a "permanent and well settled city policy." *Id.* at 691.  Indeed, "liability for improper custom

13  may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient

14  duration, frequency and consistency that the conduct has become a traditional method of carrying out

15  policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir.1996).  Moreover, the municipality's custom,

16  policy, practice, or deliberately indifferent training, supervision or hiring must be the actually cause the

17  deprivation of the plaintiff's federal rights; it must be the "moving force" behind the employees' conduct

18  resulting in the deprivation.  *Board of County Com'rs of Bryan County v. Brown*, 520 U.S. 397, 404

19  (1997).

20      Here, Plaintiffs' second claim for relief, for violation of federal rights pursuant to 42 U.S.C.

21  § 1983, is full of boilerplate allegations attempting to satisfy the requirements for municipal liability

22  discussed in the preceding paragraph.  (*See* FAC, ¶¶ 31-40.)  What the claim lacks entirely, however, is

23  any facts supporting a causal connection between the alleged policy, custom or practice and the alleged

24  deprivation of Plaintiffs' rights.  As a preliminary matter, many of the alleged policies or customs appear

25  to be based on events that took place only after the incident in question.  For example, the claim refers to

26  improper investigation practices that seem to relate to the post-incident investigation.  (*See* FAC, ¶ 32.)

27  And it specifically refers to the prosecution of Renato Hughes for the killing of Foster and Williams,

28  conduct that can only have taken place after the incident.  (FAC, ¶ 34.)  Policies and practices based

-10-

1  solely on conduct occurring after the incident cannot, in fact or logic, be the "moving force" behind the

2  incident itself.

3       Even assuming that the alleged policies and practices refer to conduct before the incident, the

4  claim—and the entire FAC—simply fail to demonstrate a causal connection between such policies and

5  the occurrence of the incident.  As discussed in sections III(B)(1)(b) and (c), above, the FAC does not

6  allege that any City official knew, prior to the incident, that Foster and Williams were in Clearlake on

7  the morning in question, that they were of African-American descent, that they had presented themselves

8  at Edmonds' residence, that an altercation ensued, and that Edmonds shot Foster and Williams.

9  Regardless of the City's policy, practice or training concerning such encounters, no City official can

10 have implemented such policy or practice, or demonstrate such deficient training, because no City

11 official had the opportunity to do so on the morning in question.  Accordingly, despite Plaintiffs'

12 conclusionary allegation that City policy was the "moving force" behind the alleged deprivations,

13 Plaintiffs' *Monell* claim does not satisfy the causation requirement.  The claim should thus be dismissed

14 pursuant to F.R.C.P. 12(b)(6).  Alternatively, Plaintiffs should be required to amend their complaint to

15 provide a more definite statement establishing the requisite causation pursuant to F.R.C.P. 12(e).

16     **D.**    **City Officials Are Entitled to Qualified Immunity from Suit and Liability for**

17            **Plaintiffs' § 1983 Claims for Relief.**

18     Qualified immunity is an affirmative defense available to officials sued pursuant to 42 U.S.C.

19 § 1983 in their individual capacity.  *See Hafer v. Melo*, 502 U.S. 21, 25 (1991).  Qualified immunity is

20 not just immunity from liability but also from suit, meaning "an entitlement not to stand trial or face the

21 other burdens of litigation." *Saucier v. Katz*, 533 U.S. 194, 200-201 (2001) (internal citation omitted).

22 Accordingly, it is an appropriate issue for determination on a motion to dismiss.  *See id.* at 201.

23     The qualified immunity analysis has two prongs.  First, the court must ask whether "taken in the

24 light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct

25 violated a constitutional right?"  *Id.* at 201.  Here, as discussed in section III(B), above, Plaintiffs have

26 not sufficiently pleaded that any City official deprived them of a federal right.

27     Even assuming that Plaintiffs had sufficiently pleaded the deprivation of a federal right, they

28 have the initial burden of proving that the right in question was clearly established—the second prong of

-11-

1    the qualified immunity analysis. *Houghton v. South*, 965 F.2d 1532, 1534 (9th Cir. 1992). This

2    proposition must be made under the specific context of the case, not as a broad proposition. *Saucier*,

3    533 U.S. at 201-202; *Anderson v. Creighton*, 483 U.S. 635, 639-640 (1987). Otherwise "[p]laintiffs

4    would be able to convert the rule of qualified immunity ... into a rule of virtually unqualified liability

5    simply by alleging violations of extremely abstract rights." *Anderson*, 483 U.S. at 639. "This is not to

6    say that an official action is protected by qualified immunity unless the very action in question has

7    previously been held unlawful ... but it is to say that in the light of the pre-existing law the unlawfulness

8    must be apparent." *Id.* at 640.

9         Here, Plaintiffs have failed to plead any facts reflecting actions taken by City officials, other than

10   protecting Edmonds, failing to protect Foster and Williams, and not forcing Edmonds to cease his illicit

11   activities. (FAC, ¶¶ 7, 15, 20.) As discussed in the previous sections, these acts do not result in

12   violations of Plaintiffs' federal rights. If Plaintiffs seek to establish the violation of clearly established

13   federal rights, they should be required to amend their complaint to include facts that would enable the

14   qualified immunity issue to be resolved at this early stage of the litigation. *See Saucier*, 533 U.S. at

15   200-201; *see Thomas v. Independence Township*, 463 F.3d 285, 301 (3rd Cir. 2006). Accordingly, the

16   City's motion to dismiss pursuant to F.R.C.P. 12(b)(6) or, alternatively, motion for a more definite

17   statement pursuant to F.R.C.P. 12(e) should be granted.

18    **E.    Plaintiffs' Fifth Claim, for Violations of the California Civil Code, Fails to State a**
          **Claim Upon Which Relief Can Be Granted**.
19

20        Plaintiffs' fifth cause of action alleges that the City, or its officials, violated "California Civil

21   Code §§ 51, 51.7, 52, et alia," resulting in injuries and damages to Plaintiffs. (FAC, ¶ 55.) This claim

22   fails to state facts sufficient to constitute a cause of action under California law because, as discussed in

23   the sections below, it fails to comply with the requirements of the California Tort Claims Act (California

24   Gov't Code §§ 900 *et seq*) and because the City and its officials are entitled to statutory immunities from

25   liability.

26    **1.    Because Plaintiffs' California Claim Fails to Allege Compliance with the**
          **California Tort Claims Act, It Fails to State a Claim for Relief Against the**
27        **City**.

28    Government Code § 911.2 provides that a "claim relating to a cause of action for death or for

1  injury to person or to personal property ... shall be presented as provided in Article 2 (commencing with

2  Section 915) not later than six months after the accrual of the cause of action." Under § 945.4, "no suit

3  for money or damages may be brought against a public entity on a cause of action for which a claim is

4  required to be presented ... until a written claim therefor has been presented to the public entity and has

5  been ... rejected[.]" Moreover, the California Supreme Court has held that "failure to allege facts

6  demonstrating or excusing compliance with the claim presentation requirement subjects a claim against a

7  public entity to a demurrer for failure to state a cause of action." *State v. Superior Court (Bodde)*, 32

8  Cal.4th 1234, 1239, 13 Cal.Rptr.3d 534 (2004).

9    Plaintiffs' FAC acknowledges that the City is a public entity. (FAC, ¶ 5.a.) However, the FAC

10  fails to allege or excuse compliance with Government Code §§ 900 *et seq.* (*See* FAC.) Accordingly, the

11  FAC fails to state any state-law cause of action against the City and should thus be dismissed.

12    **2.    The FAC Fails to Plead Its California Claim Against the City, a Public
       Entity, With the Requisite Specificity, and Thus Fails to Plead a Claim for**

13    **Relief.**

14    California Government Code § 815 provides as follows: "Except as otherwise provided by

15  statute: (a) A public entity is not liable for an injury, whether such injury arises out of an act or omission

16  of the public entity or a public employee or any other person." Because recovery against a public entity

17  is based on statute, the complaint must set forth facts sufficiently detailed and specific to support an

18  inference that each of the statutory elements of liability is satisfied; general allegations are inadequate.

19  *Mittenhuber v. City of Redondo Beach*, 142 Cal.App.3d 1, 5, 190 Cal.Rptr. 694 (1983). Failing to set

20  forth such sufficiently detailed facts prevents the public entity from determining the theory of liability as

21  well as from determining whether the complaint varies from the plaintiff's prior Tort Claims Act claim.[1]

22  *People ex rel. Dep't of Transp. v. Superior Court*, 5 Cal.App.4th 1480, 1484-1486, 7 Cal.Rptr.2d 498

23  (1992). In addition, facts supporting separate theories of liability must be pleaded separately. *Nestle v.*

24  *City of Santa Monica*, 6 Cal.3d 920, 939, 101 Cal.Rptr. 568 (1972).

25    Plaintiffs' fifth claim is based on violations of California Civil Code §§ 51, 51.7, 52, "et alia[.]"

26  California Civil Code § 51 provides, in possibly relevant part:

27

28    [1]Plaintiffs Sheila Burton, Howard Foster and Sherrill Foster have presented claims to the City, but in those claims
they allege that the deaths of Foster and Williams resulted from the failure to provide medical services, not from the conduct
now alleged in the FAC.

-13-

1    (b) All persons within the jurisdiction of this state are free and equal, and
      no matter what their sex, race, color, religion, ancestry, national origin,
2      disability, medical condition, marital status, or sexual orientation are
      entitled to the full and equal accommodations, advantages, facilities,
3      privileges, or services in all business establishments of every kind
      whatsoever.
4

5    California Civil Code § 51.7 provides, in relevant part:

6    (a) All persons within the jurisdiction of this state have the right to be free
      from any violence, or intimidation by threat of violence, committed
7      against their persons or property because of political affiliation, or on
      account of any characteristic listed or defined in subdivision (b) or (e) of
8      Section 51, or position in a labor dispute, or because another person
      perceives them to have one or more of those characteristics. The
9      identification in this subdivision of particular bases of discrimination is
      illustrative rather than restrictive.
10

11   California Civil Code § 52 provides, in relevant part:

12   (a) Whoever denies, aids or incites a denial, or makes any discrimination
      or distinction contrary to Section 51, 51.5, or 51.6, is liable for each and
13      every offense for the actual damages ... suffered by any person denied the
      rights provided in Section 51, 51.5, or 51.6.
14

15   (b) Whoever denies the right provided by Section 51.7 or 51.9, or aids,
      incites, or conspires in that denial, is liable for each and every offense for
16      the actual damages suffered by any person denied that right ...[.]

17        Here, Plaintiffs have pleaded no additional facts in their fifth claim for relief; instead, they rely

18   on the factual allegations in the rest of the FAC. (*See* FAC, ¶ 54.)  As discussed at length above, these

19   facts, with respect to the City, are that City officials protected Edmonds and Tyler, failed to protect

20   Williams and Foster, and permitted Edmonds and Tyler to engage in illegal activities.  (FAC, ¶¶ 7, 15,

21   20.)  These general allegations fall far short of satisfying each element of liability under the respective

22   statutes. *See Mittenhuber*, 142 Cal.App.3d at 5.  In addition, the FAC does not separately plead facts

23   supporting separate theories of liability. *See Nestle*, 6 Cal.3d at 939.  Accordingly, Plaintiffs' fifth claim

24   for relief fails to state facts sufficient to constitute a cause of action against the City under California law

25   and should thus be dismissed pursuant to F.R.C.P. 12(b)(6).  Alternatively, Plaintiffs should be required

26   to plead facts in conformance with California law pursuant to F.R.C.P. 12(e).

27   ///

28   ///

-14-

1    **3.    The City and Its Officials Are Entitled to Statutory Immunities from**
     **Liability Under Plaintiffs' Fifth Claim for Relief.**

2

3        In addition to meeting the Tort Claims Act's specificity requirements, a complaint against a

4  public entity must plead facts sufficient to show that the claim is beyond the scope of any applicable

5  statutory immunity. *Giannuzzi v. State of California* (1993) 17 Cal.App.4th 462, 467, 21 Cal.Rptr.2d

6  335 (1993). California Government Code 815(b) provides:

7                (b) The liability of a public entity established by this part (commencing
                 with Section 814) is subject to any immunity of the public entity provided
8                by statute, including this part, and is subject to any defenses that would be
                 available to the public entity if it were a private person.
9

10       California Government Code 815.2(b) provides:

11               (b) Except as otherwise provided by statute, a public entity is not liable for
                 an injury resulting from an act or omission of an employee of the public
12               entity where the employee is immune from liability.

13 Accordingly, where a City official is immune from liability, the City is immune as well.

14       To the extent that the FAC alleges that City officials are liable for failing to force Edmonds to

15 cease his illegal activities prior to the incident, the discretionary-act immunity provided by Government

16 Code § 820.2 applies. *McCarthy v. Frost*, 33 Cal.App.3d 872, 875, 109 Cal.Rptr. 470 (1973)

17 (discretionary acts include decisions whether to arrest or take some other form of protective action less

18 drastic than arrest). In addition, Government Code § 821 provides that"[a] public employee is not liable

19 for an injury caused by his adoption of or failure to adopt an enactment or by his failure to enforce an

20 enactment," thus immunizing City officials from any alleged failure to enforce the law against Edmonds.

21       To the extent the FAC alleges improper post-incident investigation procedures, Government

22 Code § 821.6's prosecutorial immunity applies. Government Code § 821.6 is a broad immunity that

23 encompasses all conduct related to the investigation and filing of charges, including investigations by

24 police officers. *See, e.g., Baughman v. State of California*, 38 Cal.App.4th 182, 192, 45 Cal.Rptr.2d 82

25 (1995). Section 821.6 is applied to all stages of investigations, from preliminary inquiries through

26 hearings, regardless of whether the investigation is for criminal or civil offenses. *See Kemmerer v.*

27 *County of Fresno*, 200 Cal.App.3d 1426, 1436-1437, 246 Cal.Rptr. 609 (1988).

28 ///

1    The City itself enjoys similar immunities from liability under Plaintiffs' state-law claim.

2    Government Code 818.2 provides that "[a] public entity is not liable for any injury caused by adopting or

3    failing to adopt an enactment or by failing to enforce any law." And Government Code § 845 provides

4    that

5        [n]either a public entity nor a public employee is liable for failure to
         establish a police department or otherwise to provide police protection

6        service or, if police protection service is provided, for failure to provide
         sufficient police protection service.

7

8    Here, Plaintiffs not only fail to plead facts showing that their California claim is beyond

9    applicable statutory immunities, but the facts they do plead show that the statutory immunities do apply.

10   Accordingly, Plaintiffs' fifth claim for relief against the City should be dismissed with prejudice.

11   Alternatively, Plaintiffs should be required to provide a more definite statement demonstrating that their

12   claims are beyond the scope of the statutory immunities.

13   **IV.    CONCLUSION**

14   For the foregoing reasons, the City respectfully requests that the Court grant its motion to dismiss

15   pursuant to F.R.C.P. 12(b)(6) and issue an order dismissing Plaintiffs' first, second and fifth claims

16   against it with prejudice. Alternatively, the City respectfully requests that the Court grant its motion for

17   a more definite statement pursuant to F.R.C.P. 12(e) and issue an order requiring Plaintiffs to truthfully

18   plead facts that sufficiently state claims for relief against the City and that enable the City reasonably to

19   answer the allegations.

20

21   Dated: April  10 , 2008.

22                                          LOW, BALL & LYNCH

23

24                                          By _____

25                                             MARK F. HAZELWOOD
                                               DIRK D. LARSEN

26                                             Attorneys for Defendant
                                               CITY OF CLEARLAKE

27

28

-16-