1  Russell A. Robinson (163937)
   Law Office of Russell A. Robinson, APC
2  345 Grove Street, First Floor
   San Francisco CA 94102
3  Telephone:      (415) 255-0462
   Facsimile:      (415) 431-4526
4
   Attorneys for Plaintiffs
5  SHERRILL FOSTER, HOWARD FOSTER,
   SHEILA BURTON, and MINNIE BURTON
6

7

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10 SHERRILL FOSTER, HOWARD FOSTER,      ) No.      C-07-5445-WHA
   SHEILA BURTON, and MINNIE BURTON,    )
11                                      ) **OPPOSITION TO MOTIONS TO**
          Plaintiffs,                   ) **DISMISS AND TO MOTION FOR MORE**
12                                      ) **DEFINITE STATEMENT**
   v.                                   )
13                                      ) [Jury Trial Demanded]
   SHANNON EDMONDS, LORI TYLER,         )
14 COUNTY OF LAKE, CITY OF CLEARLAKE,   ) Date:       May 22, 2008
   and DOES 1-100,                      ) Time:       8:00 a.m.
15                                      ) Honorable William H. Alsup
          Defendants.                   )
16 _____ )

17

18

19

20

21

22

23

24

25

26 *Foster, et al., v. Edmonds, et al.* (No. C-07-5445-WHA)                    P021.OPP
   OPPOSITION TO MOTIONS TO DISMISS AND TO
   MOTION FOR MORE DEFINITE STATEMENT              - 1 -

1  **I.      INTRODUCTION**

2          On the early morning of December 7, 2005, Defendant Shannon Edmonds shot and killed

3  two young men, in the back, as they ran across the street from the house in which Edmonds

4  resided and which he co-owned with Defendant Lori Tyler in the City of Clearlake, County of

5  Lake.  Those two, young men are Christian Foster and Rashad Williams, and they were hit

6  initially by Edmonds' fusillade far away from that house at 2922 11th Street in Clearlake.

7          Some believe Foster and Williams were at the 11th Street property to purchase marijuana,

8  one of the several recreational drugs Edmonds distributed or dealt from his home.  Edmonds

9  himself has not been charged with a single crime in connection with the distribution of illegal

10  drugs and the murders of Foster and Williams.  Instead, Renato Hughes is being prosecuted by

11  Lake County for the murders of Foster and Williams; though Edmonds never saw Hughes the

12  night in question, Hughes was near the 11th Street house at the time Edmonds admittedly gunned

13  down Foster and Williams.  Foster, Williams, and Hughes are black; Edmonds is white.

14          The criminal case against Hughes continues to receive scrutiny from the media.  Lake

15  County is prosecuting Hughes under the "provocative act" theory.[1]  It bears repeating: Despite

16  the fact that Hughes was nowhere near the area where a fight allegedly took place, Hughes faces

17  two felony murder charges; and, Lake County is not prosecuting Edmonds for any crime.  Jon

18  Hopkins, Lake County District Attorney, emphatically refuses to file charges against Edmonds.

19          Because the murder case against Hughes delayed receipt of critical data, meaningful

20  information has been slow to come by in this civil case.  However, the successors in interest to

21

22

23  ───────────────

24          [1]      The elements of the 'provocative act' murder are found in *People v. Gilbert* (1965) 63 Cal.2d 690
[revd. on other grounds (1967) 388 U.S. 263]: "When the defendant or his accomplice, with a conscious disregard for
life, intentionally commits an act that is likely to cause death, and his victim or a police officer kills in reasonable
25  response to such act, the defendant is guilty of murder."

26

1   Foster and Williams, the plaintiffs here, filed this action October 24, 2007.[2]  They amended their

2   complaint on December 7, 2007, with the filing of the first amended complaint (FAC).

3          Defendants Lake County and Clearlake move to dismiss under Federal Rules of Civil

4   Procedure, Rule 12(b)(6).  Clearlake also seeks a more definite statement under Rule 12(e).

5          The motions should be denied, except as addressed below with regard to the state law

6   claims against these two entities and the Ninth Amendment claim.  If the Court grants motions as

7   to the federal claims, Plaintiffs should be granted leave to amend; defects may be easily cured.[3]

8   **II.     DISCUSSION AND OPPOSITION**

9          Under FRCP, Rule 8(a), Plaintiffs' complaint must provide "fair notice of what the

10  claims are and the grounds upon which they rest.  *See, Swierkiewicz v. Sorema NA*, (2002) 534

11  US 506, 514.  A motion to dismiss under Rule 12(b)(6) focuses on the legal sufficiency of the

12  complaint.  Dismissal is proper only where the facts alleged fail to state any claim upon which

13  relief may be granted.  All well pled facts in the complaint must be taken as true and all

14  reasonable inferences that may be drawn from those facts must be in Plaintiffs' favor.  *See, e.g.,*

15  *Quality Mercury, Inc. v. Ford Motor Co.,* 542 F.2d 466, 468-469 (8th Cir. 1976).

16         **A.     The State Law Claims Against These Two Defendants Should Be Dismissed.**

17         Lake County and Clearlake are correct: Plaintiffs failed properly to plead compliance

18  with the California Claims Act in the FAC.  While Plaintiffs did in fact comply with the CCA,

19  more than six months passed following rejection of those claims before October 24, 2007.

20  / / /

21

22         [2]      Plaintiffs are the mother and father of Christian Foster, Sherrill Foster and Howard Foster; and, the
23  mother and grandmother of Rashad Williams, Sheila Burton and Minnie Burton.  They sue here as successors in interest
    and in their representative capacities.  *See, e.g., Byrd v. Guess,* 137 F.3d 1126, 1131 (9th Cir. 1998).

24         [3]      Plaintiffs oppose based on the May 22, 2008, hearing date.  There was a stipulation circulating to
    continue the hearing date and base all filing deadlines on the new date; however, Defendants appear to have abandoned
25  their desire to move the May 22nd date.

26  *Foster, et al., v. Edmonds, et al.* (No. C-07-5445-WHA)                                    P021.OPP
    OPPOSITION TO MOTIONS TO DISMISS AND TO
    MOTION FOR MORE DEFINITE STATEMENT              - 3 -

1    Thus, even if the Court permitted leave to amend to allege compliance, such an

2    amendment would only delay the inevitable. The State law claims thus survive as to the private

3    actors but not as to the municipal actors and agencies.

4    **B.    The Federal Claims Should Not Be Dismissed.**

5    Plaintiffs have sued under 42 USC section 1983, which allows individuals to bring suit

6    against persons who, under color of state law, have caused them to be "depriv[ed] of any rights,

7    privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C.

8    §1983. In order to state a claim under §1983, Plaintiffs must allege (1) that the challenged

9    conduct was attributable at least in part to a person acting under color of state law, and (2) that

10   such conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution

11   or laws of the United States. *See, e.g., Rendell-Baker v. Kohn,* (1982) 457 U.S. 830, 835, 102

12   S.Ct. 2764, 2768; *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1912.

13   A private individual may be subject to liability under this section if he or she willfully

14   collaborated with an official state actor in the deprivation of the federal right. *Adickes v. S.H.*

15   *Kress & Co.,* (1970) 398 U.S. 144, 150-152, 90 S.Ct. 1598, 1604-1605. "Private persons, jointly

16   engaged with state officials in the prohibited action, are acting 'under color' of law for purposes

17   of the statute." *Id.* [citation]. Conversely, a state actor may be subject to liability for an action

18   physically undertaken by private actors in violation of the plaintiffs' liberty or property rights if

19   the state actor directed or aided and abetted the violation. *See, e.g., Fries v. Barnes,* 618 F.2d

20   988, 991 (2d Cir. 1980). A physical beating by one who has no privilege of inflicting such

21   corporeal punishment intrudes on the victim's liberty interests. *See. E.g., Ingraham v. Wright,*

22   (1977) 430 U.S. 651, 672-74, 97 S.Ct. 1401, 1413-14.

23   Here, as seen in the FAC and demonstrated below, pursuant to official customs and

24   practices with Clearlake and Lake County, Edmonds' illegal activities were allowed, promoted,

25

26   *Foster, et al., v. Edmonds, et al.* (No. C-07-5445-WHA)                                    P021.OPP
     OPPOSITION TO MOTIONS TO DISMISS AND TO
     MOTION FOR MORE DEFINITE STATEMENT                           - 4 -

1   and protected by local law enforcement.  The murders of Foster and Williams was caused by

2   these acts; the failures by local law enforcement to move against Edmonds sooner allowed him

3   to engage in continued activity and emboldened him to such an extent that the murders of Foster

4   and Williams were foreseeable and likely to occur.

5         While perhaps not stated well in the FAC, civil rights claims against the municipalities

6   and their personnel arise here essentially from two types of activity.  One type is the active

7   assistance given to Edmonds by local law enforcement in furthering the crimes of illegal drug

8   distribution.  Investigation has uncovered the use by Edmonds of minors to sell drugs to other

9   minors, activity which Lake County and Clearlake knew about and did nothing about

10  *before* December 7, 2005.

11        The assistance given to Edmonds involves protection by members of the Clearlake Police

12  Department; and, by Lake County's District Attorney and Sheriff Departments.  While the

13  investigation still is in its infancy, the peeling away of layer upon layer has started to reveal

14  active participation by local law enforcement in Edmonds' activities from the 11th Street

15  property, again *before* December 7, 2005.

16        Of course, after December 7, 2005, Edmonds has been protected and coddled by Lake

17  County.  Hopkins refuses to prosecute Edmonds in connection with the twin murders of Foster

18  and Williams, who both were shot in the back, across the street from Edmonds' home.

19        Hopkins also refuses to prosecute Edmonds for two subsequent felonies, neither of which

20  directly involve the sale and distribution of illegal narcotics.  One such crime is the attempted

21  murder of Tyler, which took place in August 2007.  According to *Tyler*, Edmonds – who has also

22  been accused of beating Tyler before and after December 7, 2005, but never prosecuted – forced

23  Tyler to swallow numerous pills in an effort to kill Tyler, or force her to commit suicide.  It is

24  undisputed a case was never filed against Edmonds for this attempted murder; Plaintiffs are

25

26  *Foster, et al., v. Edmonds, et al.* (No. C-07-5445-WHA)                                           P021.OPP
    OPPOSITION TO MOTIONS TO DISMISS AND TO
    MOTION FOR MORE DEFINITE STATEMENT              - 5 -

1    informed and believe Clearlake Police refused to arrest Edmonds despite Tyler's accusations.

2         Then there is the destruction of evidence at the murder scene following the December 7,

3    2005, double homicide.  Members of the Clearlake Police Department, Lake County Sheriff

4    Department, and Office of the District Attorney all allowed large amounts of illegal drugs to be

5    removed from the 11th Street house and either destroyed or hidden.  A trailer on the property was

6    not searched and Defendants again allowed critical evidence to be secreted away.

7         Despite what has been portrayed as a massive and detailed search of Edmonds' home by

8    law enforcement following the two murders, weapons were never found.  Then, many days

9    following December 7, 2005, Edmonds was allowed to return to his house and, within

10   *seconds* mysteriously was able to locate a tool allegedly used by Foster or Williams in the

11   ostensible attack on the night in question.

12        In one case, Erin Delew died when her bicycle was struck by a vehicle driven by Janet

13   Kathleen Wagner.  The Las Vegas Metropolitan Police Department ("LVMPD") and Nevada

14   Highway Patrol ("NHP") ultimately found that Janet Kathleen Wagner was not the cause of Erin

15   Rae Delew's death.  Delews' heirs were not convinced.  They alleged that Wagner, whose

16   husband is an LVMPD officer, and certain other LVMPD and NHP officers, covered-up and

17   conspired to cover-up the true facts surrounding Erin Rae Delews death in violation of the

18   Delews' constitutional rights.  The Ninth Circuit, in reversing the trial court, held as follows:

19        The Delews have indeed alleged a constitutional violation, namely, that the defendants
          violated the Delews' right of meaningful access to the courts by covering up the true facts
20        surrounding Erin Rae Delew's death.  The Supreme Court held long ago that the right of
          access to the courts is a fundamental right protected by the Constitution. [Citation]  More
21        recently, the Sixth Circuit held that the Constitution guarantees plaintiffs the right of
          meaningful access to the courts, the denial of which is established where a party engages
22        in prefiling actions which effectively covers-up evidence and actually renders any state
          court remedies ineffective.[4]  *See Swekel v. City of River Rouge*, 119 F.3d 1259, 1262 (6th
23        Cir. 1997), cert. denied, 118 S. Ct. 690 (1998). . . .

24   _____

25        [4]      As Plaintiffs' state claims here, against these defendants, were thus rendered.

26   *Foster, et al., v. Edmonds, et al.* (No. C-07-5445-WHA)                                    P021.OPP
     OPPOSITION TO MOTIONS TO DISMISS AND TO
     MOTION FOR MORE DEFINITE STATEMENT                    - 6 -

1

2

3

4

5

6

7

> To prevail on their claim, the Delews must demonstrate that the defendants' cover-up violated their right of access to the courts. . . . The district court additionally erred by holding that the Delews' conspiracy cover-up claim failed to state a claim for relief.  In support of their conspiracy claim, the Delews allege that Janet Kathleen Wagner left the accident scene during the investigation and that the LVMPD and NHP officers permitted Wagner to do so. Construing these facts in a light most favorable to the Delews, it is reasonable to infer an understanding between Wagner and the officers to cover-up the true facts of Erin Rae Delew's death and thereby deprive the Delews of their right of access to the courts.  *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970) (. . . to satisfy color of state law requirement under civil conspiracy theory, plaintiff need only have shown that there was an understanding between civilian and officers to deprive plaintiff of her rights). . . .  *Delew v. Wagner*, 143 F.3d 1219, 1222-1223 (9th Cir. 1998).

8    Apprehension by the use of deadly force is a seizure subject to the reasonableness

9 requirement of the Fourth Amendment. *Tennessee v. Garner,* (1985) 471 U.S. 1, 7, 105 S.Ct.

10 1694.  The nature and the quality of the individual's Fourth Amendment interests must be

11 balanced against countervailing governmental interests. *Id.* at 8, 105 S.Ct. at 1699; *United States*

12 *v. Place,* 462 U.S. 696, 703, 103 S.Ct. 2637, 2642 (1983).  "[T]he 'reasonableness' inquiry in an

13 excessive force case is an objective one: the question is whether the officers' actions are

14 'objectively reasonable' in light of the facts and circumstances confronting them, without regard

15 to their underlying intent or motivation.". *Graham v. Connor,* (1989) 490 U.S. 386, 396-397, 109

16 S.Ct. 1865, 1872; *see, also, Munoz v. City of Union City* (2004) 120 Cal.App.4th 1077, 1102,

17 *Martinez v. County of Los Angeles* (1996) 47 Cal.App.4th 334, 343.

18    This inquiry, of whether the suspect posed "a threat of serious physical harm either to the

19 officer" or to others is usually a question of fact for the jury.  *Sloman v. Tadlock*, 21 F.3d 1462,

20 1468 (9th Cir. 1994); *Hopkins v. Andaya*, 958 F.2d 881, 885 (9th Cir. 1992).

21    While the person who claims excessive force was directed at him or her can only raise a

22 fourth amendment claim, as can successors in interest, parents claiming loss of companionship

23 and society of his or her child raise a different constitutional claim. The Ninth Circuit recognizes

24 that a parent has a constitutionally protected liberty interest under the Fourteenth Amendment in

25

26

1    the companionship and society of his or her child.  *See, Strandberg v. City of Helena,* 791 F.2d

2    744, 748 (9th Cir. 1986); *Kelson v. City of Springfield,* 767 F.2d 651, 653-55 (9th Cir. 1985).

3        Thus, Plaintiffs here have pled claims under the First, Fourth, and Fourteenth

4    Amendments.  References to the Ninth Amendment in the FAC are incorrect.

5        **C.    The Request For More Definite Statement Should Be Denied.**

6        Somewhere, somehow over the past few years defendants in civil rights cases began

7    arguing for a heightened pleading standard.  Though that standard had been rejected by the

8    United States Supreme Court in all but rare cases, and though many such defendants do not refer

9    to a "heightened pleading standard," the truth is that it is such a standard sought to be enforced.

10        The United States Supreme Court has repeatedly instructed lower courts not to impose

11   heightened standards in the absence of an explicit requirement in a statute or federal rule.

12   *Swierkiewicz v. Sorema N.A.*, (2002) 534 U.S. 506, 515, 122 S.Ct. 992 [rejecting heightened

13   pleading standard for Title VII employment discrimination suits]; and, *Leatherman v. Tarrant*

14   *County Narcotics Intelligence & Coordination Unit*, (1993) 507 U.S. 163, 164, 113 S.Ct. 1160

15   [rejecting heightened pleading standard for §1983 suits asserting municipal liability].

16        A motion under FRCP Rule 12(e), for a more definite statement, cannot be a substitute

17   for the discovery process in view of the liberal notice pleading standard and the availability of

18   extensive discovery.  *See, Frederick v. Kozial,* (ED Va. 199) 727 F.Supp. 1019, 1020-1021.

19   Rule 12(e) is designed to reach unintelligibility, not lack of detail.  *See, Scarbrough v. R-Way*

20   *Furniture Co.,* (ED Wis. 1985) 105 FRD 90, 91.  The defense appears to seek additional detail

21   despite the liberal pleading standards of the Federal Rules.  Thus, the motion under Rule 12(e)

22   should be denied.  Plaintiffs have given notice of the nature of the claims against Defendants.

23

24   / / /

25

26   *Foster, et al., v. Edmonds, et al.* (No. C-07-5445-WHA)                                   P021.OPP
     OPPOSITION TO MOTIONS TO DISMISS AND TO
     MOTION FOR MORE DEFINITE STATEMENT                    - 8 -

1  **D.     If The Court Grants The Motion To Dismiss The Federal Claims As To**

2  **These Municipal Defendants, Leave To Amend Should Be Granted.**

3       Plaintiffs should be permitted leave to amend if the Court (a) finds that Plaintiffs need

4  additional facts to state claims upon which relief may be granted, and (b) grants the motions

5  under Rule 12(b)(6).  Federal Rules of Civil Procedure, Rule 15(a) is very liberal and leave to

6  amend "shall be freely given when justice so requires."  *See, Bowles v. Reade*, 198 F.3d 752, 757

7  (9th Cir.1999).  "Dismissal without leave to amend is improper unless it is clear, . . ., that the

8  complaint could not be saved by any amendment."  *Vasquez v. Los Angeles County,* 487 F.3d

9  1246, 1258 (9th Cir. 2007).   As illustrated above, Plaintiffs are able to state claims federal law;

10  facts in support of their claims may be stated.

11  **III.     CONCLUSION**

12       A private actor killed two men, through the use of excessive force.  That actor had been

13  supported, protected, and coddled by local law enforcement.  The two murders were the natural

14  and foreseeable result of this cozy and unholy alliance.

15       After the double homicide, law enforcement destroyed the survivors' ability to pursue

16  certain state remedies.  These municipal entities and actors aided and abetted the killer with a

17  cover-up and other acts designed to thwart and to frustrate the Plaintiffs.  The killer continues to

18  receive protection from his friend and allies in law enforcement.

19       The motions should be denied, except as outlined above.  If granted, leave to amend

20  should be given.  Any defects are easily cured.

21

22  Date:   May 1, 2008                         _____/s/Russell A. Robinson_____
                                               By:     Russell A. Robinson
23                                             Law Office of Russell A. Robinson, APC
                                               Counsel for Plaintiffs
24                                             SHERRILL FOSTER, HOWARD FOSTER, SHEILA
                                               BURTON, and MINNIE BURTON

25

26  *Foster, et al., v. Edmonds, et al.* (No. C-07-5445-WHA)                              P021.OPP
    OPPOSITION TO MOTIONS TO DISMISS AND TO
    MOTION FOR MORE DEFINITE STATEMENT                    - 9 -