```
MARK F. HAZELWOOD, SBN 136521
DIRK D. LARSEN, SBN 246028
LOW, BALL & LYNCH
505 Montgomery Street, 7th Floor
San Francisco, California  94111-2584
Telephone (415) 981-6630
Facsimile (415) 982-1634

Attorneys for Defendant
CITY OF CLEARLAKE
```

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHERRILL FOSTER, HOWARD FOSTER, SHEILA BURTON, and MINNIE BURTON,<br><br>    Plaintiffs,<br><br>v.<br><br>SHANNON EDMONDS, LORI TYLER, COUNTY OF LAKE, CITY OF CLEARLAKE, and DOES 1-100,<br><br>    Defendants. | Case No.: C-07-5445-WHA<br><br>DEFENDANT CITY OF CLEARLAKE'S REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS (F.R.C.P. (12)(b)(6)), OR IN THE ALTERNATIVE, MOTION FOR MORE DEFINITE STATEMENT (F.R.C.P. 12(e))<br><br>Date:         May 29, 2008<br>Time:        8:00 a.m.<br>Courtroom:  9, 19th Floor<br>Judge:       Hon. William H. Alsup |

## I. INTRODUCTION

Plaintiffs SHERRILL FOSTER, HOWARD FOSTER, SHEILA BURTON, and MINNIE BURTON ("Plaintiffs) concede that their state-law claims against defendant City of Clearlake (the "City") should be dismissed due to their failure to satisfy the requirements of California Government Code §§ 900 *et seq.* The remaining claims against the City are thus the first and second claims for relief, both brought pursuant to 42 U.S.C. § 1983 for alleged violations of the Fourth and Fourteenth Amendments to the U.S. Constitution. These claims should be dismissed with prejudice because (1) Plaintiffs have not—and cannot—plead facts establishing the necessary causal link between the conduct of City officials and the alleged constitutional deprivations, and (2) Plaintiffs cannot establish

-1-

DEFENDANT CITY OF CLEARLAKE'S REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS (F.R.C.P. 12(b)(6)),
OR IN THE ALTERNATIVE, MOTION FOR MORE DEFINITE STATEMENT (F.R.C.P. 12(e))

J:\1427\sf0002\Pld\P-MTD-reply.wpd                                                           C-07-5445-WHA

that co-defendants Lori Tyler and Shannon Edmonds acted under color of state law, thus precluding a finding of state action necessary to sustain their § 1983 claims against the City.

In their opposition to the present motion, Plaintiffs appear to be alleging a new theory of liability: denial of meaningful access to the courts in violation of the First and Fourteenth Amendments. Plaintiffs did not include this theory in their First Amended Complaint ("FAC"). Because neither the FAC nor Plaintiffs' opposition satisfies the pleading requirements for a denial-of-access claim, any claim based on this theory should be dismissed. In the alternative, Plaintiffs should be required to provide a more definite statement of their claim(s) underlying a denial-of-access cause of action, the relief they seek on this cause of action, and the causal connection between the alleged official misconduct and their inability to obtain such relief.

## II. SUMMARY OF FACTUAL ALLEGATIONS AGAINST THE CITY

In their FAC, Plaintiffs allege that the City or its employees (the unnamed Doe defendants) engaged in the following conduct prior to the incident: "allowing Edmonds and Tyler unlawfully to sell recreational drugs, to possess firearms, to use minors in unlawful sale of recreational drugs ... failing to protect persons such as Christian [Foster] and Rashad [Williams] ... allowing Edmonds and Tyler to use, store and/or unlawfully distribute illegal drugs from their residence[;]" "fail[ing] to force [Edmonds and Tyler] to stop illegal activities[;]" and "provid[ing] protection to Edmonds, a known drug dealer, and ... allowing the racist Edmonds to continue his illegal activity." (FAC, ¶¶ 7, 15, 20.) Plaintiffs also allege that the City or its employees engaged in a number of wrongful acts after the incident. These acts relate to the investigation of the incident and ultimate prosecution of one Renato Hughes for the murder of Foster and Williams. (FAC, ¶¶ 27, 32, 34.) Plaintiffs allege that these acts resulted from City customs, policies, practices, and/or procedures as well as inadequate hiring, training, instruction, monitoring, supervision, evaluation, investigation and discipline of its employees. (FAC, ¶¶ 32-34.)

In their opposition to the present motion, Plaintiffs allege additional facts—or rephrase existing ones—in the same vein. *See* Plaintiffs' Opposition to Motions to Dismiss and to Motion for More Definite Statement ("Opp.") at 5:5-6:11. They allege that, before the incident, local law enforcement gave "active assistance" to Edmonds in "furthering the crimes of illegal drug distribution," and that there was "active participation by local law enforcement in Edmonds' activities[.]" Opp. at 5:6-15. They

allege that, after the incident, local officials failed to prosecute Edmonds for unrelated crimes, including the attempted murder of Tyler, and that they destroyed evidence pertaining to the incident. Opp. at 5:19-6:11.

### III. ARGUMENT

In both their FAC and their opposition to the present motion, Plaintiffs fail to allege facts that establish the requisite causal link between municipal conduct and the alleged constitutional deprivations, whether under a theory of individual or municipal (*Monell*) liability. Specifically, they fail to allege that City officials encouraged or coerced Foster and Williams to present themselves at Edmonds' home, that they knew Foster and Edmonds had done so, that they knew Foster and Williams were of African-American descent, and that they even knew of Foster and Williams' presence in the City. The failure to allege these or similar facts is fatal to Plaintiffs' § 1983 claims against the City, whether based on the conduct of City officials or on that of Edmonds as a purported state actor. Absent allegations linking a municipality to the deprivations allegedly suffered by the particular plaintiffs, the municipality would be liable under § 1983 every time a suspected criminal committed a crime against a member of the public. Such an eventuality would not only be bad policy, but is also at odds with settled case authority requiring a causal link between official conduct and the deprivation(s) the specific plaintiffs claim to have suffered.

**A. Because Plaintiffs Cannot Establish a Causal Connection Between the City's Conduct and the Alleged Deprivations, They Cannot Sustain Any § 1983 Claim Against the City or its Employees.**

To sustain a § 1983 claim against a municipal or state official, a plaintiff must allege a causal connection between the official's act and the deprivation that the particular plaintiff suffered. *See Martinez v. State of California*, 444 U.S. 277, 285 (1980); *see Stevenson v. Koskey*, 877 F.2d 1435, 1438 (9th Cir. 1989). In *Martinez*, the complaint alleged that state parole officials released a convicted sex offender after he had served five years of a one-to-twenty year sentence. *Martinez*, 444 U.S. at 279. The sentencing court had recommended that the offender not be paroled, and the parole officials allegedly failed to observe the requisite formalities in reaching their decision. *Id.* Five months after his release, the parolee tortured and killed the plaintiffs' decedent. *Id.* at 279-280. The Supreme Court accepted as true the plaintiffs' allegation that the parolee constituted a clear and present danger to the public at large,

-3-

DEFENDANT CITY OF CLEARLAKE'S REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS (F.R.C.P. 12(b)(6)), OR IN THE ALTERNATIVE, MOTION FOR MORE DEFINITE STATEMENT (F.R.C.P. 12(e))

J:\1427\sf0002\Pld\P-MTD-reply.wpd                                                              C-07-5445-WHA

but held that the plaintiffs did not state a claim for relief under § 1983. *Id.* at 279. The Court stated:

> [The parolee] was in no sense an agent of the parole board. [Citation.] Further, the parole board was not aware that appellants' decedent, as distinguished from the public at large, faced any special danger. [...] [U]nder the particular circumstances of this parole decision, appellants' decedent's death is too remote a consequence of the parole officers' action to hold them responsible under the federal civil rights law. Although a § 1983 claim has been described as "a species of tort liability," [citation], it is perfectly clear that not every injury in which a state official has played some part is actionable under that statute.

*Id.* at 285.

*Martinez* is exactly on point. Even assuming the truth of Plaintiffs' various allegations regarding City officials' "protection" of or "assistance" to Edmonds, there is simply no allegation supporting the inference that City officials were—or could have been—aware that Foster and Williams, "as distinguished from the public at large, faced any special danger." *Id.* at 285. As in *Martinez*, Foster and Williams' deaths were too remote a consequence of any City officials' alleged action to form the basis for § 1983 liability. Accordingly, Plaintiffs' § 1983 claims against any unnamed City officials should be dismissed with prejudice.

As discussed in the City's moving papers, a causal connection is also required for holding a municipality liable under the *Monell* doctrine. *Board of County Com'rs of Bryan County v. Brown*, 520 U.S. 397, 404 (1997). Here, regardless of the City's policy, practice or training concerning encounters between people such as Edmonds, Foster and Williams, no City official can have implemented such policy or practice, or demonstrated such deficient training, because no City official had the opportunity to do so on the morning of the incident. Accordingly, despite Plaintiffs' conclusionary allegation that City policy was the "moving force" behind the alleged deprivations, Plaintiffs' *Monell* claim does not satisfy the causation requirement. The FAC's § 1983 claims against the City should thus be dismissed with prejudice.

**B.    Because Edmonds' Conduct Cannot Be Consider State Action Under Any Theory, It May Not Be Attributed to the City for Purposes of § 1983 Liability.**

In its moving papers, the City argued that Edmonds may not be considered a state actor for purposes of § 1983 claims under any accepted test: public function, joint participation, state compulsion and symbiotic relationship. *See* the City's Motion to Dismiss or, in the Alternative, for a More Definite

1  Statement at 7:9-10:5. In their opposition, Plaintiffs do not call into question the City's analysis of the
2  pleading allegations under these tests. Instead, they cite a Second Circuit case, *Fries v. Barnes*, 618 F.2d
3  988 (2nd Cir. 1980), whose holding is consistent with the Ninth Circuit cases the City cited in its
4  moving papers. Opp. at 4:17-20. The *Fries* plaintiff alleged that private physicians turned over
5  surgically removed shotgun fragments, tissue and blood to the local police, at the direction of the police
6  chief, without the plaintiff's consent. *Fries*, 618 F.2d at 990. In finding that the plaintiff sufficiently
7  pleaded a § 1983 claim, the *Fries* court applied the following principle: "where ... officials actively
8  participate in a search being conducted by private parties or else stand by watching with approval as the
9  search continues, ... authorities are clearly implicated in the search and it must comport with fourth
10 amendment requirements." *Id.* at 991. This principle is essentially the same as the one applied by the
11 Ninth Circuit in *Howerton v. Gabica*, 708 F.2d 380 (9th Cir. 1983), a case that the City cited in its
12 moving papers.

13 Unlike both *Fries* and *Howerton*, the case at bar does not involve allegations of municipal
14 officials' directing the conduct of private parties, or standing by and watching with approval. On the
15 contrary, Plaintiffs have not alleged—and cannot truthfully allege—that City officials knew of Foster
16 and Williams' presence in the City and at Edmonds house, knew of their race and ethnicity, directed
17 Edmonds to shoot them, or stood by and watched with approval as Edmonds did so. Accordingly, under
18 the authority Plaintiffs themselves cite, as well as under Ninth Circuit authority, Plaintiffs cannot allege
19 facts sufficient to establish that Edmonds acted under color of state law. Edmonds' acts thus cannot be
20 attributed to the City, precluding § 1983 liability on the part of the City based on Edmonds' acts.
21 Plaintiffs § 1983 claims against the City should be dismissed with prejudice.

22     **C.**     <u>**The FAC Does Not Satisfy the Pleading Requirements for a Claim of Denial of Meaningful Access to Courts in Violation of the First and Fourteenth Amendments**</u>.

24 In their opposition, Plaintiffs appear to allege a new theory of liability against the City: denial of
25 meaningful access to the courts in violation of the First and Fourteenth Amendments. *See* Opp. at
26 6:12-7:7. The right of meaningful access to courts is ancillary to an underlying claim for damages,
27 "without which a plaintiff cannot have suffered injury by being shut out of court." *Christopher v.*
28 *Harbury*, 536 U.S. 403, 415 (2002). The elements required to plead any denial-of-access claim are (1) a

1  nonfrivolous or arguable underlying cause of action, whether anticipated or lost, and (2) official acts
2  frustrating the litigation. *Id.* In addition, if Plaintiffs allege that the official acts already prevented them
3  from litigating the underlying cause of action (a "backward-looking" denial-of-access claim), the
4  complaint must "identify a remedy that may be awarded as recompense but not otherwise available in
5  some suit that may be brought." *Id.*; *see Phillips v. Hust*, 477 F.3d 1070, 1078-1079 (9th Cir. 2007). If
6  Plaintiffs allege that the official acts frustrate pending or future litigation (a "forward-looking" denial of
7  access claim), their claim is not ripe until they attain an unfavorable result in that litigation. *See Delew
8  v. Wagner*, 143 F.3d 1219, 1223 (9th Cir. 1998).

9      A complaint alleging denial of meaningful access must state the underlying claim alleged to have
10 been frustrated "just as if it were being independently pursued, and a like plain statement should describe
11 any remedy available under the access claim and presently unique to it." *Harbury*, 536 U.S. at 417-418.
12 Otherwise the defendant will not have "fair notice" of the allegations against it. *Id. Harbury's* second
13 element—official acts frustrating the litigation—is a causation element: "as in any § 1983 case, [the
14 plaintiff] must show that the alleged violation of his rights was proximately caused by ... the state actor."
15 *Phillips*, 477 F.3d at 1077. Accordingly, to state a claim against the City for denial of meaningful access
16 to the courts in violation of the First and Fourteenth Amendments, Plaintiffs would have to identify the
17 underlying claim(s), allege facts establishing that the City's officials frustrated Plaintiffs' attempt to
18 litigate the underlying claim(s), and identify the remedy unique to the denial-of-access suit.

19     Plaintiffs' FAC satisfies none of these requirements. It does not contain any claim at all based on
20 the alleged denial of meaningful access to the courts. Plaintiffs do not identify past causes of action
21 whose litigation was thwarted, nor do they identify pending or future ones. In addition, they do not
22 plead facts that plausibly support the inference that officials' acts frustrated their ability to litigate such
23 claims. *See Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1968-1969 (2007) (holding that F.R.C.P. 8
24 requires plaintiffs to plead direct or inferential allegations that plausibly support each material element of
25 a claim). Finally, they do not identify the remedy they seek on the denial-of-access claim, whether or not
26 unique to that claim. Accordingly, Plaintiffs' late attempt to plead a denial-of-access claim should be
27 denied, and any such purported claim dismissed. In the alternative, Plaintiffs should be required to
28 provide a more definite statement to give the City the fair notice that *Harbury* requires.

## IV. CONCLUSION

For the foregoing reasons, the City respectfully requests that the Court grant its motion pursuant to F.R.C.P. 12(b)(6), without leave to amend, and dismiss all claims alleged against it in Plaintiffs' First Amended Complaint with prejudice. If the Court should grant Plaintiffs leave to amend their complaint to include a claim for denial of meaningful access to the courts, the City respectfully requests that the Court require Plaintiffs to provide a definite statement of that claim which meets the requirements set forth in *Harbury*, *Phillips* and *Delew*.

Dated: May 7, 2008

LOW, BALL & LYNCH

By _____
MARK F. HAZELWOOD
DIRK D. LARSEN
Attorneys for Defendant
CITY OF CLEARLAKE