<div style="writing-mode: vertical">**United States District Court**
For the Northern District of California</div>

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SHERRILL FOSTER, HOWARD FOSTER,
SHEILA BURTON, and MINNIE BURTON

       Plaintiffs,

   v.

SHANNON EDMONDS, LORI TYLER,
COUNTY OF LAKE, CITY OF
CLEARLAKE, and DOES 1-100,

       Defendants.

                               /

No. C 07-05445 WHA

**ORDER GRANTING
DEFENDANTS' MOTION TO
DISMISS AND VACATING
HEARING**

**INTRODUCTION**

In this civil-rights action, defendants County of Lake and City of Clearlake separately
move to dismiss all plaintiffs' claim. Because plaintiffs have stated no cognizable federal
claim, defendants' motions are **GRANTED**. The hearing on these motions are hereby
**VACATED**.

**STATEMENT**

On December 7, 2005, Rashad Williams ("Williams") and Christian Foster ("Foster")
visited the home of defendant Shannon Edmonds (FAC ¶ 13). After an altercation between the
parties, Williams and Foster fled the house and started running across the street (*id*. at ¶ 14).
Edmonds, according to the complaint, then began firing a gun at Williams and Foster hitting
and killing them both (*ibid*.).

**United States District Court**
For the Northern District of California

1    Plaintiffs allege Edmonds was a known drug dealer and regularly solicited teenagers in

2 the area to sell drugs on his behalf (*id*. at ¶ 14).  The complaint further alleges that the County

3 of Lake, City of Clearlake, and the Doe defendants conspired with Edmonds (a Caucasian) and

4 were partly responsible for the deaths of Williams and Foster (both African American) by

5 wrongfully allowing Edmonds to continue his unlawful drug ring (*id*. at ¶ 7).  In particular,

6 plaintiffs allege defendants:  (1) "allow[ed] Edmonds and Tyler unlawfully to sell recreational

7 drugs, to possess firearms, [and] to use minors in the unlawful sale of recreational drugs; (2)

8 "failed to force [Edmonds and Tyler] to stop illegal activities;" (3) "protect[ed] Edmonds, a

9 known drug dealer, and allow[ed] the racist Edmonds to continue his illegal activity;" and (4)

10 "fail[ed] to investigate properly and evaluate deaths involving black men shot by a white

11 person" (*id*. at ¶¶ 1, 15, 20, 32).  Edmonds and Tyler were never prosecuted for the deaths of

12 Williams and Foster.  Notably, plaintiffs do not allege that Edmonds or Tyler were employed by

13 the County or City.

14    Plaintiffs filed this action on October 24, 2007, alleging deprivation of civil rights under

15 42 U.S.C. 1983 and violations of various state-law claims against the city and county.  Plaintiffs

16 Sherrill Foster and Howard Foster bring their claims as the mother and father, respectively, and

17 successors in interest for their son, decedent Foster and the Estate of Christian Dante Foster (*id*.

18 at ¶ 3).  Plaintiffs Sheila Burton and Minnie Burton bring their claims as the mother and

19 grandmother, respectively, and successors in interest for decedent Williams (*ibid.*).  The City

20 and County now move to dismiss all claims against them for failure to state any cognizable

21 claim.

22                                          **ANALYSIS**

23    **1.    LEGAL STANDARD.**

24    A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged

25 in the complaint.  The Supreme Court has recently explained that "[w]hile a complaint attacked

26 by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's

27 obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and

28 conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell*

1    *Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (May 21, 2007) (citations and alterations

2    omitted). "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat

3    a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy Co.*, 83 F.3d 1136,

4    1140 (9th Cir. 1996). In complaints that do not allege fraud, plaintiffs need only make "a short

5    and plain statement of the claim," thus giving the defendant fair notice of the claim and of the

6    grounds upon which it rests. *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (quoting Fed. R. Civ. P.

7    8(a)(2)).

8              **2.      STATE-LAW CLAIMS.**

9              In their opposition, plaintiffs concede that all of their state-law claims were not brought

10    in compliance with the California Claims Act and should therefore be dismissed as to the

11    County and City.

12              **3.      SECTION 1983 CLAIM**.

13              "The terms of Section 1983 make plain two elements that are necessary for recovery.

14    First, the plaintiff must prove that the defendant has deprived him of a right secured by the

15    'Constitution and laws' of the United States. Second, the plaintiff must show that the defendant

16    deprived him of this constitutional right 'under color of any statute, ordinance, regulation,

17    custom, or usage, of any State or Territory.' This second element requires that the plaintiff

18    show that the defendant acted 'under color of law.'" *Adickes v. S. H. Kress & Co.*, 398 U.S.

19    144, 150 (1970). A private individual or entity may be considered a state actor where the "state

20    has exercised such coercive power or has provided such significant encouragement, either overt

21    or covert, that the choice must be that of the State." *American Mfrs. Mut. Ins. Co. V. Sullivan*,

22    526 U.S. 40, 52 (1999).

23              Municipalities and local governments can be sued directly for violations of

24    constitutional rights under Section 1983 where government officials were acting pursuant to an

25    official policy or recognized custom. *Monell v. Dept. of Social Serv. of New York*, 436 U.S.

26    658, 690 (1978). The plaintiff must identify the policy or custom which caused the violation.

27    "The plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was

28    the 'moving force' behind the conduct alleged. That is, a plaintiff must show that the municipal

*United States District Court*
For the Northern District of California

3

United States District Court

For the Northern District of California

1    action was taken with the requisite degree of culpability and must demonstrate a direct causal

2    link between the municipal action and the deprivation of federal rights." *Bd. of County*

3    *Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 404 (1997) (emphasis in original).

4        Plaintiffs essentially base their Section 1983 claim on the allegation that the City and

5    County knew about Edmond's illegal conduct and chose do nothing about it.  This inaction,

6    plaintiffs allege, somehow enabled Edmonds to shoot Foster and Williams.  Plaintiffs' oblique

7    theory, however, is not pled sufficiently to sustain any Section 1983 claim.  Plaintiffs primarily

8    rely on *Fries v. Barnes*, 618 F.2d 988 (2nd Cir. 1980), where the plaintiff alleged that a private

9    physician turned over surgically removed shotgun fragments from plaintiff's thigh and other

10   personal effects of plaintiff's to the police at the behest of a police officer.  In holding that the

11   plaintiff had sufficiently pled a Section 1983 claim, the court, *quoting United States v. Mekjian*,

12   505 F.2d 1320, 1327 (5th Cir. 1975), stated:

13           Accordingly, where federal officials actively participate in
             a search being conducted by private parties or else stand by
14           watching with approval as the search continues, federal
             authorities are clearly implicated in the search and it must
15           comport with fourth amendment requirements.

16   The Ninth Circuit has applied this same principle.  *See Howerton v. Gabica*, 708 F.2d 380 (9th

17   Cir. 1983).

18       Here, unlike *Fries*, plaintiffs have not alleged that city or county officials directed

19   Edmonds to confront Williams and Foster or that they stood back and watched the incident with

20   approval.  In fact, plaintiffs have not even alleged that the county or city knew that Williams

21   and Foster were going to visit Edmonds at his home.  In *Martinez v. State of California*, 444

22   U.S. 277 (1980), the complaint alleged that the state negligently released a convicted rapist after

23   serving five years even though he was sentenced to a term of one to twenty years, with a

24   recommendation that he not be paroled.  Five months after his release the parolee tortured and

25   killed the plaintiffs' decedent.  Plaintiffs brought a Section 1983 claim alleging that by

26   negligently releasing the parolee, the state had deprived the plaintiffs' decedent of her life

27   without due process of law.  The Supreme Court in *Martinez*, 444 U.S. at 285, found that the

28   plaintiffs had failed to state a Section 1983 claim, holding:

4

United States District Court

For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

> Although the decision to release Thomas from prison was action by the State, the action of [parolee] five months later cannot be fairly characterized as state action. Regardless of whether, as a matter of state tort law, the parole board could be said either to have had a 'duty' to avoid harm to his victim or to have proximately caused her death, we hold that, taking these particular allegations as true, appellees did not 'deprive; appellants' decedent of life within the meaning of the Fourteenth Amendment. Her life was taken by the parolee five months after his release. He was in no sense an agent of the parole board. Further, the parole board was not aware that appellants' decedent, as distinguished from the public at large, faced any special danger. . . . [W]e do hold that at least under the particular circumstances of this parole decision, appellants decedent's death is too remote a consequence of the parole officers' action to hold them responsible under the federal civil rights law. Although a § 1983 claim has been described as 'a species of tort liability,' it is perfectly clear that not every injury in which a state official has played some part is actionable under that statute.

12    Similarly, the current allegations in the complaint are far too remote to attribute the deaths of

13    Williams and Foster to the actions of the city and county. There is no allegation that Edmonds

14    was in any way acting as an agent of the city or county or that the city or county implemented

15    any policy that contributed even in part to the shootings. Plaintiffs' conclusory allegations are

16    not enough.

17         Although not alleged in the complaint, in their opposition brief plaintiffs rely on a new

18    theory to support their Section 1983 claim: that the county and city's actions deprived plaintiffs

19    of their right to meaningful access the court system. To properly plead a claim for denial of

20    meaningful access to the court system a plaintiff must show the existence of an underlying

21    claim, whether anticipated or lost. The access claim "is ancillary to the underlying claim,

22    without which a plaintiff cannot have suffered injury by being shut out of court." *Christopher*

23    *v. Harbury*, 536 U.S. 403, 415 (2002). "[T]he underlying cause of action, whether anticipated

24    or lost, is an element that must be described in the complaint, just as much as allegations must

25    describe the officials acts frustrating the litigation." *Id.*

26         In *Delew v. Wagner*, 143 F.3d 1219, 1222–23 (9th Cir. 1998), the Ninth Circuit reversed

27    the district court's decision to dismiss the plaintiffs' access-to-courts claim. The plaintiffs there

28    alleged that the Las Vegas Metropolitan Police Department and the Nevada Highway Patrol

**United States District Court**

For the Northern District of California

1  conspired to cover up the negligent killing of their decedent, Erin Delew, by Janet Wagner, who

2  was married to a police officer in the LVMPD.  The Ninth Circuit held:

> The Delews have indeed alleged a constitutional violation,
> namely, that the defendants violated the Delews' right of
> meaningful access to the courts by covering up the true
> facts surrounding Erin Rae Delew's death. The Supreme
> Court held long ago that the right of access to the courts is
> a fundamental right protected by the Constitution.  More
> recently, the Sixth Circuit held that the Constitution
> guarantees plaintiffs the right of meaningful access to the
> courts, the denial of which is established where a party
> engages in pre-filing actions which effectively covers-up
> evidence and actually renders any state court remedies
> ineffective.  Applying the Sixth Circuit's reasoning . . . to
> the Delews' case, we believe the Delews' complaint alleges
> a cognizable claim under section.  To prevail on their
> claim, the Delews must demonstrate that the defendants'
> cover-up violated their right of access to the courts by
> rendering any available state court remedy ineffective. . . .
> The district court additionally erred by holding that the
> Delews' conspiracy cover-up claim failed to state a claim
> for relief.  In support of their conspiracy claim, the Delews
> allege that Janet Kathleen Wagner left the accident scene
> during the investigation and that the LVMPD and NHP
> officers permitted Wagner to do so.  Construing these facts
> in a light most favorable to the Delews, it is reasonable to
> infer an understanding between Wagner and the officers to
> cover-up the true facts of Erin Rae Delew's death and
> thereby deprive the Delews of their right of access to the
> courts.

The complaint does not allege facts that could sustain a Section 1983 claim based on a denial of

meaningful access to the court system.  Among other things, the complaint does not describe

what underlying action was frustrated by the city or county and it does not specifically comport

with the remaining requirements discussed above to properly plead a denial-of-access claim.  If

this is to be re-pled, it must be done with adequate specificity as to all elements of a *Delew*

claim.

## CONCLUSION

For the reasons stated above, all claims against defendants County of Lake and City of

Clearlake are **DISMISSED**.  Plaintiffs may move within fourteen calendar days for leave to

amend.  Any such motion should be accompanied by a proposed pleading and the motion

should explain why the foregoing problems are overcome by the proposed pleading.  Plaintiffs

1   must plead their best case.  Failing such a motion, judgment will be entered for the city and

2   county.

3

4       **IT IS SO ORDERED.**

5   Dated: May 23, 2008.

6                                                          WILLIAM ALSUP
                                                           UNITED STATES DISTRICT JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
For the Northern District of California