Russell A. Robinson (163937)
Law Office of Russell A. Robinson, APC
345 Grove Street, First Floor
San Francisco CA 94102
Telephone:    (415) 255-0462
Facsimile:    (415) 431-4526

Attorneys for Plaintiffs
SHERRILL FOSTER, HOWARD FOSTER,
SHEILA BURTON, and MINNIE BURTON

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHERRILL FOSTER, HOWARD FOSTER, SHEILA BURTON, and MINNIE BURTON, | ) No.    C-07-5445-WHA ) |
| Plaintiffs, | ) **OPPOSITION TO MOTIONS TO** ) **DISMISS** ) |
| v. | ) [Jury Trial Demanded] ) |
| SHANNON EDMONDS, LORI TYLER, and DOES 1-100, | ) Date:        September 25, 2008 ) Time:        8:00 a.m. ) Honorable William H. Alsup |
| Defendants. | ) |
| _____ | ) |

## I.    INTRODUCTION

On the early morning of December 7, 2005, Defendant Shannon Edmonds shot and killed two young men, in the back, as they ran across the street from the house in which Edmonds resided and which he co-owned with Defendant Lori Tyler in the City of Clearlake, County of Lake.  Those two, young men are Christian Foster and Rashad Williams, and they were hit initially by Edmonds' fusillade far away from that house at 2922 11th Street in Clearlake.

Some believe Foster and Williams were at the 11th Street property to purchase marijuana, one of the several recreational drugs Edmonds distributed or dealt from his home.  Edmonds himself has not been charged with a single crime in connection with the distribution of illegal drugs and the murders of Foster and Williams.  Instead, Renato Hughes was prosecuted by Lake County for the murders of Foster and Williams; though Edmonds never saw Hughes the night in question, Hughes was near the 11th Street house at the time Edmonds admittedly gunned down Foster and Williams.  Foster, Williams, and Hughes are black; Edmonds is white.

The criminal case against Hughes continues to receive scrutiny from the media.  Lake County prosecuted Hughes under the "provocative act" theory.[1]  It bears repeating: Hughes faced two felony murder charges; and, Lake County is not prosecuting Edmonds for any crime.  Jon Hopkins, Lake County District Attorney, emphatically refuses to file charges against Edmonds.

Because the murder case against Hughes delayed receipt of critical data, meaningful information has been slow to come by in this civil case.  However, the successors in interest to Foster and Williams, the plaintiffs here, filed this action October 24, 2007.[2]  They amended their

---

[1]    Elements of the 'provocative act' murder are found in *People v. Gilbert* (1965) 63 Cal.2d 690 [revd. on other grounds (1967) 388 U.S. 263]: "When the defendant or his accomplice, with a conscious disregard for life, intentionally commits an act that is likely to cause death, and his victim or a police officer kills in reasonable response to such act, the defendant is guilty of murder."  Hughes was found ***not*** guilty of murder by the Contra Costa County jury.

[2]    Plaintiffs are the mother and father of Christian Foster, Sherrill Foster and Howard Foster; and, the mother and grandmother of Rashad Williams, Sheila Burton and Minnie Burton.  They sue here as successors in interest and in their representative capacities.  *See, e.g., Byrd v. Guess,* 137 F.3d 1126, 1131 (9th Cir. 1998).

1   complaint on December 7, 2007, with the filing of the first amended complaint (FAC).

2        Defendants Lake County and Clearlake moved to dismiss under Federal Rules of Civil

3   Procedure, Rule 12(b)(6).  That motion was granted and the two remaining defendants, Edmonds

4   and Tyler, have now filed to dismiss in separate motions.

5        The motions should be denied.  If the Court grants motions as to the federal claims,

6   Plaintiffs should be granted leave to amend; defects may be easily cured.

7   **II.      DISCUSSION AND OPPOSITION**

8        Under FRCP, Rule 8(a), Plaintiffs' complaint must provide "fair notice of what the

9   claims are and the grounds upon which they rest.  *See, Swierkiewicz v. Sorema NA*, (2002) 534

10   US 506, 514.  A motion to dismiss under Rule 12(b)(6) focuses on the legal sufficiency of the

11   complaint.  Dismissal is proper only where the facts alleged fail to state any claim upon which

12   relief may be granted.  All well pled facts in the complaint must be taken as true and all

13   reasonable inferences that may be drawn from those facts must be in Plaintiffs' favor.  *See, e.g.,*

14   *Quality Mercury, Inc. v. Ford Motor Co.,* 542 F.2d 466, 468-469 (8th Cir. 1976).

15        **A.      The Evidence Adduced At Trial Gives Rise To New, Related Federal Claims.**

16           **(1)      42 USC §1981**

17        The jury trial against Renato Hughes ended on August 8, 2008 – less than one month ago.

18   During that trial, Shannon Edmonds testified *inter alia* that he would never sell drugs to black

19   people; of course, Edmonds used more inflammatory language in his testimony.  But, the

20   evidence revealed at the trial was that Edmonds would sell his "medicinal" marijuana and other

21   wares to white people only.  This is a violation of 42 USC §1981, which gives private persons

22   equal rights under the law as follows:

23       a) Statement of equal rights
        All persons within the jurisdiction of the United States shall have the same right in every

24       State and Territory to make and enforce contracts, to sue, be parties, give evidence, and
        to the full and equal benefit of all laws and proceedings for the security of persons and

25       **property as is enjoyed by white citizens,** and shall be subject to like punishment, pains,

26

1   penalties, taxes, licenses, and exactions of every kind, and to no other.

2   b) "Make and enforce contracts" defined
    For purposes of this section, the term "make and enforce contracts" includes the making,
3   performance, modification, and termination of contracts, and the enjoyment of all
    benefits, privileges, terms, and conditions of the contractual relationship.

4
    c) Protection against impairment
5   **The rights protected by this section are protected against impairment by
    nongovernmental discrimination and impairment under color of State law.**
6   [Emphasis added]

7            **(2)    42 USC §1985(3)**

8          Trial testimony brought to light new evidence of the fact that Edmonds, Tyler, and others

9   discriminated against black people such as decedents when selling drugs.  Additional evidence

10  came to light that Edmonds, Tyler, and others conspired to violate the decedents' civil rights the

11  night Edmonds shot and killed Williams and Foster as they ran across the street, away from

12  Edmonds' home.  Under 42 USC §1985(3), the new evidence gives rise to the following claim.

13         If two or more persons in any State or Territory conspire or go in disguise on the
           highway or on the premises of another, for the purpose of depriving, either directly or
14         indirectly, any person or class of persons of the equal protection of the laws, or of equal
           privileges and immunities under the laws; or for the purpose of preventing or hindering
15         the constituted authorities of any State or Territory from giving or securing to all persons
           within such State or Territory the equal protection of the laws; . . ., in any case of
16         conspiracy set forth in this section, if one or more persons engaged therein do, or cause to
           be done, any act in furtherance of the object of such conspiracy, whereby another is
17         injured in his person or property, or deprived of having and exercising any right or
           privilege of a citizen of the United States, the party so injured or deprived may have an
18         action for the recovery of damages occasioned by such injury or deprivation, against any
           one or more of the conspirators.

19

20         **B.      The Original Federal Claims Should Not Be Dismissed.**

21         Plaintiffs have previously sued under 42 USC section 1983, which allows individuals to

22  bring suit against persons who, under color of state law, have caused them to be "depriv[ed] of

23  any rights, privileges, or immunities secured by the Constitution and laws" of the United States.

24  42 U.S.C. §1983.  In order to state a claim under §1983, Plaintiffs must allege (1) that the

25  challenged conduct was attributable at least in part to a person acting under color of state law,

26

and (2) that such conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. *See, e.g., Rendell-Baker v. Kohn,* (1982) 457 U.S. 830, 835, 102 S.Ct. 2764, 2768; *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1912.

A private individual may be subject to liability under this section if he or she willfully collaborated with an official state actor in the deprivation of the federal right. *Adickes v. S.H. Kress & Co.,* (1970) 398 U.S. 144, 150-152, 90 S.Ct. 1598, 1604-1605. "Private persons, jointly engaged with state officials in the prohibited action, are acting 'under color' of law for purposes of the statute." *Id.* [citation]. Conversely, a state actor may be subject to liability for an action physically undertaken by private actors in violation of the plaintiffs' liberty or property rights if the state actor directed or aided and abetted the violation. *See, e.g., Fries v. Barnes,* 618 F.2d 988, 991 (2d Cir. 1980). A physical beating by one who has no privilege of inflicting such corporeal punishment intrudes on the victim's liberty interests. *See. E.g., Ingraham v. Wright,* (1977) 430 U.S. 651, 672-74, 97 S.Ct. 1401, 1413-14.

Here, as seen in the FAC and demonstrated below, pursuant to official customs and practices with Clearlake and Lake County, Edmonds' illegal activities were allowed, promoted, and protected by local law enforcement. The murders of Foster and Williams were caused by these acts; the failures by local law enforcement to move against Edmonds sooner allowed him to engage in continued activity and emboldened him to such an extent that the murders of Foster and Williams were foreseeable and likely to occur.

The assistance given to Edmonds involves protection by members of the Clearlake Police Department; and, by Lake County's District Attorney and Sheriff Departments. While the investigation still is in its infancy, the peeling away of layer upon layer has started to reveal active participation by local law enforcement in Edmonds' activities from the 11th Street property, again *before* December 7, 2005.

/ / /

1    Then there is the destruction of evidence at the murder scene following the December 7,

2   2005, double homicide.  Members of the Clearlake Police Department, Lake County Sheriff

3   Department, and Office of the District Attorney all allowed large amounts of illegal drugs to be

4   removed from the 11th Street house and either destroyed or hidden.  A trailer on the property was

5   not searched and Defendants again allowed critical evidence to be secreted away.

6    Despite what has been portrayed as a massive and detailed search of Edmonds' home by

7   law enforcement following the two murders, weapons were never found.  Then, many days

8   following December 7, 2005, Edmonds was allowed to return to his house and, within

9   *seconds* mysteriously was able to locate a tool allegedly used by Foster or Williams in the

10   ostensible attack on the night in question.

11    In one case, Erin Delew died when her bicycle was struck by a vehicle driven by Janet

12   Kathleen Wagner.  The Las Vegas Metropolitan Police Department ("LVMPD") and Nevada

13   Highway Patrol ("NHP") ultimately found that Janet Kathleen Wagner was not the cause of Erin

14   Rae Delew's death.  Delews' heirs were not convinced.  They alleged that Wagner, whose

15   husband is an LVMPD officer, and certain other LVMPD and NHP officers, covered-up and

16   conspired to cover-up the true facts surrounding Erin Rae Delews death in violation of the

17   Delews' constitutional rights.  The Ninth Circuit, in reversing the trial court, held as follows:

18    The Delews have indeed alleged a constitutional violation, namely, that the defendants
      violated the Delews' right of meaningful access to the courts by covering up the true facts
19    surrounding Erin Rae Delew's death.  The Supreme Court held long ago that the right of
      access to the courts is a fundamental right protected by the Constitution. [Citation]  More
20    recently, the Sixth Circuit held that the Constitution guarantees plaintiffs the right of
      meaningful access to the courts, the denial of which is established where a party engages
21    in prefiling actions which effectively covers-up evidence and actually renders any state
      court remedies ineffective.  *See Swekel v. City of River Rouge*, 119 F.3d 1259, 1262 (6th
22    Cir. 1997), cert. denied, 118 S. Ct. 690 (1998). . . .

23    To prevail on their claim, the Delews must demonstrate that the defendants' cover-up
      violated their right of access to the courts. . . . The district court additionally erred by
24    holding that the Delews' conspiracy cover-up claim failed to state a claim for relief.  In
      support of their conspiracy claim, the Delews allege that Janet Kathleen Wagner left the
25    accident scene during the investigation and that the LVMPD and NHP officers permitted

26

1   Wagner to do so. Construing these facts in a light most favorable to the Delews, it is
    reasonable to infer an understanding between Wagner and the officers to cover-up the
2   true facts of Erin Rae Delew's death and thereby deprive the Delews of their right of
    access to the courts. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970) (. . . to
3   satisfy color of state law requirement under civil conspiracy theory, plaintiff need only
    have shown that there was an understanding between civilian and officers to deprive
4   plaintiff of her rights). . . .  *Delew v. Wagner*, 143 F.3d 1219, 1222-1223 (9th Cir. 1998).

5        Apprehension by the use of deadly force is a seizure subject to the reasonableness

6   requirement of the Fourth Amendment. *Tennessee v. Garner,* (1985) 471 U.S. 1, 7, 105 S.Ct.

7   1694.  The nature and the quality of the individual's Fourth Amendment interests must be

8   balanced against countervailing governmental interests. *Id.* at 8, 105 S.Ct. at 1699; *United States*

9   *v. Place,* 462 U.S. 696, 703, 103 S.Ct. 2637, 2642 (1983).  "[T]he 'reasonableness' inquiry in an

10  excessive force case is an objective one: the question is whether the officers' actions are

11  'objectively reasonable' in light of the facts and circumstances confronting them, without regard

12  to their underlying intent or motivation.". *Graham v. Connor,* (1989) 490 U.S. 386, 396-397, 109

13  S.Ct. 1865, 1872; *see, also, Munoz v. City of Union City* (2004) 120 Cal.App.4th 1077, 1102,

14  *Martinez v. County of Los Angeles* (1996) 47 Cal.App.4th 334, 343.

15       This inquiry, of whether the suspect posed "a threat of serious physical harm either to the

16  officer" or to others is usually a question of fact for the jury.  *Sloman v. Tadlock*, 21 F.3d 1462,

17  1468 (9th Cir. 1994); *Hopkins v. Andaya*, 958 F.2d 881, 885 (9th Cir. 1992).

18       While the person who claims excessive force was directed at him or her can only raise a

19  fourth amendment claim, as can successors in interest, parents claiming loss of companionship

20  and society of his or her child raise a different constitutional claim. The Ninth Circuit recognizes

21  that a parent has a constitutionally protected liberty interest under the Fourteenth Amendment in

22  the companionship and society of his or her child.  *See, Strandberg v. City of Helena,* 791 F.2d

23  744, 748 (9th Cir. 1986); *Kelson v. City of Springfield,* 767 F.2d 651, 653-55 (9th Cir. 1985).

24

25  */ / /*

26

1       **C.**    **Should The Court Dismiss, Leave To Amend Should Be Granted.**

2       Plaintiffs should be permitted leave to amend if the Court (a) finds that Plaintiffs need

3 additional facts to state claims upon which relief may be granted, and (b) grants the motions

4 under Rule 12(b)(6). Federal Rules of Civil Procedure, Rule 15(a) is very liberal and leave to

5 amend "shall be freely given when justice so requires." *See, Bowles v. Reade*, 198 F.3d 752, 757

6 (9th Cir.1999). "Dismissal without leave to amend is improper unless it is clear, . . ., that the

7 complaint could not be saved by any amendment." *Vasquez v. Los Angeles County,* 487 F.3d

8 1246, 1258 (9th Cir. 2007). As illustrated above, Plaintiffs are able to state claims federal law;

9 facts in support of their claims may be stated.

10       **D.**    **This Court Should Retain Jurisdiction If The Federal Claims Are Dismissed.**

11       Plaintiffs invoked the jurisdiction of this Court under 28 USC §§ 1331 and 1343(a)(3),

12 based upon claims arising under 42 USC §1983. In addition to these claims, Plaintiffs allege

13 additional state law claims for negligence (count 3), battery (count 4), and for California Civil

14 Code violations (count 5) and invoked the jurisdiction of this court over their additional claims

15 based on supplemental jurisdiction pursuant to 28 U.S.C. §1367(a).

16       Should this court enter judgment on Plaintiffs' federal claims, the Court has broad

17 discretion to retain the remaining claims pursuant to 28 USC §1367(c)(3). *Foster v. Wilson*, 504

18 F.3d 1036 (9th Cir. 2007). Dismissal of plaintiffs' state law claims following entry of judgment

19 on the pleadings on the federal claims ***will*** result in substantial prejudice to Plaintiffs and ***will***

20 produce a significant waste of judicial resources and/or economy.

21       Initial disclosures have been made, the remaining counsel have met and conferred and

22 await approval from counsel for Lori Tyler to file a joint discovery plan, a settlement conference

23 is set to proceed on October 7, 2008, before Magistrate Judge Bernard Zimmerman, and trial of

24 this case has also been set. The remaining parties agreed to certain discovery and to stay other

25 discovery pending the outcome of the settlement conference. Plaintiff served written discovery.

26

1

**III.    CONCLUSION**

2

A private actor killed two men, through the use of excessive force.  That actor had been

3

supported, protected, and coddled by local law enforcement.  The murders were motivated by

4

race.  The two murders were the natural and foreseeable result of this cozy and unholy alliance.

5

The killer continues to receive protection from his friends and allies in law enforcement.

6

The motions should be denied.  If granted, leave to amend should be given.  Any defects

7

are easily cured.

8

9

Date:   September 4, 2008            _____/s/Russell A. Robinson_____

By:     Russell A. Robinson

10

Law Office of Russell A. Robinson, APC

Counsel for Plaintiffs

11

SHERRILL FOSTER, HOWARD FOSTER, SHEILA

BURTON, and MINNIE BURTON

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26